Curtis John KOVALESKY.

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 3, 2003.

Decided March 10, 2004.

Publication Ordered May 18, 2004.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

Myron R. Sainovich, Beaver, for appellee.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.

Before the Court is the Department of Transportation (DOT), Bureau of Driver Licensing's (Bureau) appeal of the order of the Court of Common Pleas of Beaver County sustaining the statutory appeal of Curtis John Kovalesky (Licensee). Licensee had appealed his one-year license suspension pursuant to Section 1532(b)(3) of the Vehicle Code, 75 Pa.C.S. §§ 1532(b)(3),[1] and Article IV(a)(2) of the Driver's License Compact (Compact), 75 Pa.C.S. § 1581.[2] Numerous issues were

---

1. Section 1532(b)(3) provides that DOT:

   shall suspend the operating privilege of any driver for 12 months upon receiving a certified record of the driver's conviction of section 3731 (relating to driving under influence of alcohol or controlled substance) or 3733 (relating to fleeing or attempting to elude police officer), or *substantially similar offenses reported to the department under Article III of section 1581 (relating to Driver's License Compact)....*

   (Emphasis added.)

2. This Article pertinently provides:

   (a) *The licensing authority in the home state,* for the purposes of suspension, revocation

raised on appeal. However, because we determine that *nunc pro tunc* relief was not warranted, we need not decide the other issues.

On April 24, 2002, Licensee, a Pennsylvania resident, was convicted in West Virginia of driving while under the influence of a measurable amount of alcohol while under the age of 21, W. Va.Code § 17C–5–2(h) (2002). Thereafter, West Virginia notified the Bureau of the conviction by sending a conviction report. Consequently, on July 9, 2002, the Bureau issued a notice to Licensee indicating that his license was suspended pursuant to Article III of the Compact, because the West Virginia offense was similar to Section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731 (relating to driving under the influence of alcohol or controlled substance). Pursuant to this notice, Licensee voluntarily surrendered his license to the Bureau on August 8, 2002. Nearly two months later, on October 31, 2002, Licensee filed a petition to appeal the suspension *nunc pro tunc.*

In support of his *nunc pro tunc* petition, Licensee had attached the following documents: 1) a notice dated January 30, 2002 from the Licensing Authority of West Virginia indicating that his license was suspended based upon his January 19, 2002 arrest and that he had the right to administrative review of this revocation; 2) a letter dated April 29, 2002, from the prosecuting attorney in the criminal case, which had a copy of the conviction order, dated April 24, 2002, attached to it, in which the court accepted Licensee's plea of no contest to "the charge of Driving with A Measurable Amount"; 3) a notice from the

Pennsylvania Department of Transportation indicating that it was suspending his license for one year "[a]s a result of your 4/24/2002 conviction in West Virginia"; 4) an order dated August 30, 2002, from an administrative hearing as to his West Virginia license suspension in which the Commissioner of the West Virginia Division of Motor Vehicles reversed the January order of revocation of his reciprocal motor vehicle privilege on the basis that the state of West Virginia had failed to present any evidence at the administrative hearing; and, 5) a letter from the Pennsylvania Department of Transportation, dated August 16, 2002, acknowledging receipt of his Pennsylvania driver's license.

Licensee argued that *nunc pro tunc* relief was appropriate because there was a "breakdown in the court operation." Specifically, he argued that the breakdown occurred because, his reciprocal driving privileges in West Virginia had been restored in August 2002 following an administrative appeal and that, consequently, his Pennsylvania drivers' license, which had been suspended several weeks earlier as a result of the April conviction, should similarly be restored. The trial court, without an opinion or explanation, permitted Licensee to appeal *nunc pro tunc.*

At a subsequent hearing on the merits of the appeal, Licensee's counsel argued that, under the Compact, the home state was required to give the same effect to the conviction as the reporting state did: "The licensing authorities of the home state for purposes of suspension, revocation, or limitation of license to operate a motor vehicle

or limitation of the license to operate a motor vehicle, *shall give the same effect to the conduct reported,* pursuant to Article III of this compact, as it would if such conduct had occurred in the home state in the case of convictions for . . .

(2) *driving a motor vehicle while under the influence of intoxicating liquor* or a narcotic drug or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle. . . .
(Emphasis added.)

shall be given the same effect to the conduct reported, and that's where our argument comes in, Your Honor." (Transcript of hearing on the merits, p. 12). Licensee, thus, argued that his appeal should be sustained because the charge issued against him at his arrest (driving under the influence) was reduced at the time of his conviction (driving with a measurable amount).[3]

The trial court sustained the appeal on a different basis, relying on an issue raised *sua sponte,* concluding that the documents put forth by the Commonwealth should not have been admissible under *Tripson v. Department of Transportation, Bureau of Driver Licensing,* 773 A.2d 195 (Pa. Cmwlth.2001), *petition for allowance of appeal denied,* 568 Pa. 690, 796 A.2d 320 (2002). The Bureau appealed to this Court.

Before us, the Bureau argues, *inter alia,* that the appeal was untimely in that it exceeded the 30–day statutorily prescribed period, thereby depriving the common pleas court of jurisdiction, and that Licensee failed to establish any basis for *nunc pro tunc* relief. Accordingly, the Bureau argues that the trial court erred in allowing the appeal *nunc pro tunc,* and, therefore, that the court was without jurisdiction to review the merits of the appeal.

■ Our precedent is clear that "the thirty day appeal period is jurisdictional." *Commonwealth Department of Transportation., Bureau of Driver Licensing v. Stollsteimer,* 156 Pa.Cmwlth. 64, 626 A.2d 1255, 1256 (1993). Failure to bring an appeal within the statutorily prescribed period precludes the common pleas court from exercising subject matter jurisdiction. *Hudson v. Department of Transportation, Bureau of Driver Licensing,* 830 A.2d 594, 598 (Pa.Cmwlth.2003). As to cases brought outside the 30–day appeal period, a common pleas court may only assume jurisdiction if the party requests to appeal *nunc pro tunc* and establishes sufficient evidence to merit such an appeal. *Stollsteimer.* In evaluating the evidence and arguments produced in support of a *nunc pro tunc* petition, "Courts have no power to permit a licensee to appeal nunc pro tunc, absent fraud or a breakdown in the administrative or judicial process caused through default of its officers." *Department of Transportation, Bureau of Driver Licensing v. Grasse,* 146 Pa. Cmwlth. 17, 606 A.2d 544, 546 (1991). A trial court's denial of *nunc pro tunc* relief is appropriate when the licensee presents no evidence to establish a basis for such relief and counsel's attorney makes statements that, even if substantiated, would not provide a basis for such relief. *Stollsteimer.*

■ In the instant case, Licensee presented no evidence of any breakdown in the administrative or judicial process. The documents presented by Licensee at the hearing to determine whether *nunc pro tunc* relief was warranted, indicate, on their face, that he had been convicted in West Virginia on April 24, 2002. Licensee acknowledged this conviction at the hearing. The documents also show that the

---

**3.** Both offenses are discussed in the same statutory section, Section 17C–5–2 whose title is "driving under the influence of alcohol." The section lists several bases for finding a person guilty of "driving under the influence of alcohol", including when an adult operates a vehicle with a blood alcohol of .10%, and as set forth in subparagraph (h), when a person under the age of twenty-one "drives a vehicle in this state while he or she has an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than ten hundredths of one percent, by weight...." Licensee failed to set forth below, as well as before this court, why this conviction for driving with a measurable amount could not form a basis for suspension of his Pennsylvania driving privileges.

Bureau acted upon this conviction in approximately two months, issuing a notice of suspension on July 9, 2002. The notice of suspension unequivocally indicates that Licensee had "the right to appeal this action to the Court of Common Pleas (Civil Division) within 30 days of the mail date...." (Notice of Suspension, p. 3). Instead of appealing the decision, the documents indicate that Licensee chose to comply with the decision, surrendering his license to the Department. He does not argue that any of the documents or conduct of the Department was fraudulent. Rather, he now argues that there was a breakdown in the administrative or judicial process because the West Virginia licensing authority, although properly notifying the Department of the conviction, failed to subsequently notify the Department that Licensee's West Virginia reciprocal driving privileges had been restored.[4] He then posits that his Pennsylvania driving privileges should have been restored because his West Virginia reciprocal driving privileges had been restored and, thus, that the failure of the Department to receive notification was a breakdown in the administrative process.

■■■■ Licensee's argument is premised on a misunderstanding of the workings of the Compact. The administrative revocation or restoration of reciprocal driving privileges within the reporting state is not relevant to a license suspension in the home state under the Compact. The basic premise of the Compact is that *criminal conduct*, resulting in a *conviction* within the reporting state, is to be treated by the home state as if it had occurred in the latter. It is not a reporting state's *regulatory action* as to a licensee's reciprocal driving privileges in the reporting state that triggers the Compact's provisions, but the *criminal conviction* in the reporting state.[5] Under Article III, the reporting state is required to provide notice to the

4. The documents on their face indicate that a regulatory appeal of a license suspension was pending at the same time as the separate, criminal hearing and subsequent conviction. The documents indicate that his reciprocal West Virginia driving privileges had been administratively revoked in January as a result of the arrest, but that subsequently, in August, following a regulatory proceeding, the revocation was reversed. However, the documents also indicate that, on April 24, 2002, he pleaded no contest in a criminal proceeding before a magistrate court to the crime of driving under the influence of a measurable amount of alcohol while under the age of twenty-one. In this action, and in the action before the common pleas court, licensee made no argument that the West Virginia conviction was not substantially similar to an offense listed within the Compact or to the Pennsylvania offense which the Department applied in issuing the suspension.

5. Article III of the Compact, which addresses the reporting states responsibilities provides that:

The licensing authority of a party state shall report each *conviction* of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which action was taken, indicate whether a plea of guilty or not guilty was entered or the conviction was a result of the forfeiture of bail, bond or other security and shall include any special findings made in connection therewith.

75 Pa.C.S. § 1581 (emphasis added).

Article II of the Compact provides that:

As used in this compact:

(c) "**Conviction**" means a conviction of any offense related to the use or operation of a motor vehicle which is prohibited by state law, municipal ordinance or administrative rule or regulation or a forfeiture of bail, bond or other security deposited to secure appearance by a person charged with having committed any such offense and which conviction or forfeiture is required to be reported to the licensing authority.

75 Pa.C.S. § 1581.

home state of any criminal convictions for offenses delineated in the Compact. Upon a home state's receipt of the Article III mandated conviction report from the reporting state, Article IV sets forth the home state's responsibilities as to the use of the conviction report. Under Article IV, the home state applies its own penalties as if Licensee had been convicted of the analogous Pennsylvania offense.[6] Nothing in the language of the Compact requires a reporting state to provide notice to the home state of any civil or regulatory actions initiated within the reporting state as to Licensee's reciprocal driving privileges within that state. Additionally, even if such notice, although not required, were provided by the reporting state, nothing within the Compact language requires or authorizes the home state to act upon such notice.[7] Licensee's misunderstanding of

6. Article IV of the Compact, which addresses the responsibilities of the home state, provides that:

Effect of Conviction

(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the **conduct** reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home state in the case of convictions for:

\* \* \* \*

(2) driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle;

\* \* \* \*

(b) As to other convictions, reported pursuant to Article III, the licensing authority in the home state shall give such effect to the conduct as is provided by the laws of the home state.

(c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) of this article as being applicable to and identifying those offenses or violations of a substantially similar nature and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.

75 Pa.C.S. § 1581.

7. Licensee's argument would essentially delegate to a foreign state Pennsylvania's right to discipline and regulate its own licensed drivers, based upon that state's decision regarding the Pennsylvania licensee's reciprocal driving privileges within that state. Regardless of whatever civil actions a reporting state may pursue as to these reciprocal driving privileges, the home state retains full, independent authority, as the licensing state for the licensee, to apply whatever penalties are appropriate, for out-of-state convictions of Compact-related offenses, reported to the home state through means of the Compact. Article I(a)(3) of the Compact, 75 Pa.C.S. § 1581, notes that "[t]he continuance in force of a license to drive is predicated upon compliance with laws and ordinances relating to the operation of motor vehicles, in whichever jurisdiction the vehicle is operated." Evidence of a conviction derived from a conviction report establishes that the laws of a particular jurisdiction have not been complied with. The reporting mechanisms of the Compact provide a means for the state in which the offender is licensed to take appropriate action as to that licensee to advance the goals of the Compact, particularly that of "[p]romot[ing] compliance with the laws ... relating to the operation of motor vehicles by their operators in each of the jurisdictions where such operators drive motor vehicles." Article I(b)(1), 75 Pa.C.S. § 1581. As such, whatever actions the reporting state may take as to the reciprocal driving privileges within its state of a Pennsylvania licensee, are of no bearing for the Department in fulfilling its Article IV Compact duties. It is only the evidence of convictions for a licensee's non-compliance with the laws of another state as to offenses articulated in the Compact that are of consequence to the Department's responsibilities. Licensee's argument to the contrary is without merit.

the mechanisms of the reciprocity provisions of the Compact ·do not establish "fraud or a breakdown in the administrative or judicial process" as is required to allow a ·court to authorize an appeal *nunc pro tunc*. As the appeal was brought beyond the statutorily prescribed appeal period, and as Licensee did not establish an adequate basis to appeal *nunc pro tunc*, the trial court erred in ruling on the merits of the appeal.

For these reasons, we vacate the common pleas court's order on the basis of lack of jurisdiction.

### ORDER

**NOW,** March 10, 2004, the order of the Court of Common Pleas of Beaver County in the above-captioned matter is hereby vacated for lack of jurisdiction.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority concludes that the Court of Common Pleas of Beaver County (trial court) erred in allowing Curtis John Kovalesky (Licensee) to appeal *nunc pro tunc* from the driver's license suspension imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) pursuant to the Driver's License Compact (Compact), 75 Pa.C.S. § 1581. For the following reasons, I cannot agree.

Licensee was arrested in West Virginia on January 19, 2002, and was charged with driving while under the influence of alcohol (DUI), a violation of W. Va.Code § 17C–5–2. (R.R. at 67a.) On January 30, 2002, West Virginia revoked Licensee's driving privileges in that state pursuant to W. Va.Code § 17C–5A–1(c). (R.R. at 8a.) Licensee challenged the revocation, requesting a hearing before the Commissioner of West Virginia's Division of Motor Vehicles (Commissioner). (R.R. at 15a.)

On April 24, 2002, in Hancock County Magistrate Court, the DUI charge was dismissed, and Licensee pleaded no contest to a lesser offense, driving while under the age of twenty-one years with a blood alcohol concentration of .02 or more, but less than .10, a violation of W. Va.Code § 17C–5–2(h). (R.R. at 10a, 67a.) The Magistrate certified this conviction to DOT in an abstract of judgment. (R.R. at 67a, 77a.) On July 9, 2002, DOT suspended·Licensee's driving privileges in Pennsylvania for "a violation that is similar to violating Section 3731 of the Pennsylvania Vehicle Code, DRIVING UNDER INFLUENCE."[1] (R.R. at 64a.)

On August 19, 2002, Licensee received an administrative hearing in West Virginia on the revocation of his driving privileges. (R.R: at 15a–16a.) Because West Virginia failed to present any evidence at the hearing,. the Commissioner reversed the revocation of Licensee's driving privileges by order dated August 30, 2002. *Id.*

Licensee, who was represented by counsel, believed that, under the Compact, West Virginia was required to notify DOT of the Commissioner's restoration of Licensee's driving privileges, and DOT was required to rescind its license suspension in Pennsylvania. When that did not occur, Licensee sought to appeal DOT's suspension *nunc pro tunc* before the trial court. On January 9, 2003, the trial court held a hearing solely to determine whether to allow a *nunc pro tunc* appeal in this case.[2] (*See* R.R. at 18a, 28a, 50a, 55a.)

The majority states, "Licensee · argued that *nunc pro tunc* relief was appropriate

---

1. Although Licensee had been convicted of a lesser charge than DUI, DOT's records show that Licensee was convicted of DUI. (R.R. at 69a, 71a.)

2. At the hearing, DOT attempted to introduce documents relating to the merits of the case and moved to quash the appeal. (R.R. at 24a.) Licensee objected to the admission of

because there was a 'breakdown in the court operation.'" (Majority op. at 28.) I submit that this is incorrect. Although the majority does quote from a statement made by counsel for Licensee,[3] the "breakdown" argument was *not* the argument made by Licensee on January 9, 2003, nor was it the argument that persuaded the trial court to allow a *nunc pro tunc* appeal in this case. Indeed, when *DOT* made the "breakdown" argument, Licensee's attorney responded, "I don't believe that there has to be a breakdown.... The case law is [that a *nunc pro tunc* appeal is allowed if there is] a unique circumstance...." (R.R. at 29a–30a.)

Counsel for Licensee was correct. "[C]ourts have held that an appeal *nunc pro tunc* may be granted in a unique case upon a showing that unusual circumstances prevented a party from timely filing...." *Hanoverian v. Lehigh County Board of Assessment,* 701 A.2d 288, 289 (Pa.Cmwlth.1997). Counsel for Licensee argued that the unusual circumstances of this case prevented Licensee from filing a timely appeal. Essentially, the argument was that, until West Virginia restored Licensee's driving privileges, it was *impossible* for Licensee to challenge DOT's suspension based on the restoration of his driving privileges in West Virginia. Of course, by the time West Virginia acted to restore Licensee's driving privileges, the

period for appealing the DOT suspension had expired. The trial court recognized that these were unusual circumstances that prevented Licensee from filing a timely appeal to raise that issue. Thus, the trial court concluded that a *nunc pro tunc* appeal was necessary.[4] I see no error in this determination.

Having granted a *nunc pro tunc* appeal, the trial court sustained the appeal based on *Tripson v. Department of Transportation,* 773 A.2d 195 (Pa.Cmwlth.2001), *appeal denied,* 568 Pa. 690, 796 A.2d 320 (2002). In *Tripson,* as here, DOT attempted to offer into evidence a West Virginia Magistrate's abstract of judgment to meet its burden of proving an out-of-state conviction. This Court held that a West Virginia Magistrate's abstract of judgment was inadequate to satisfy Article III of the Compact, which requires the *licensing authority* of the party state to report the conviction to DOT.[5] *Id.* Here, because the Magistrate's abstract of judgment presented by DOT was not sufficient to meet DOT's burden of proving an out-of-state conviction, the trial court did not err in sustaining Licensee's appeal.

Accordingly, unlike the majority, I would affirm.

---

the documents, arguing that they were irrelevant to the *nunc pro tunc* appeal issue. (R.R. at 24a–25a.) The trial court agreed with Licensee and sustained the objection to the admissibility of the documents. (R.R. at 42a.)

3. Counsel for Licensee stated, "Your Honor, the purpose of this hearing ... is to establish the existence of some breakdown in the Court operation *or* some unique circumstance which would entitle my client to a hearing on whether or not his license privilege should be ... suspended." (R.R. at 25a) (emphasis added).

4. The majority states that the trial court permitted the *nunc pro tunc* appeal without an opinion or explanation. (Majority op. at 4.) However, I believe the basis for the trial court's decision is clear from the argument presented by Licensee at the January 9, 2003, hearing.

5. This court also stated that DOT may not certify a document to be the report of a conviction from a licensing authority if the document itself does not contain certification by the licensing authority. *Tripson.*