David CLEARY

v.

COMMONWEALTH of Pennsylvania,
DEPARTMENT OF TRANS-
PORTATION, Appellant.

David Cleary

v.

Commonwealth of Pennsylvania,
Department of Transportation,
Appellant.

David Cleary

v.

Commonwealth of Pennsylvania, De-
partment of Transportation, Bureau
of Driver Licensing, Appellant.

David Cleary

v.

Commonwealth of Pennsylvania, De-
partment of Transportation, Bureau
of Driver Licensing, Appellant.

David Cleary

v.

Commonwealth of Pennsylvania,
Department of Transportation,
Appellant.

David Cleary

v.

Commonwealth of Pennsylvania,
Department of Transportation,
Appellant.

David Cleary

v.

Commonwealth of Pennsylvania,
Department of Transportation,
Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 23, 2007.

Decided March 23, 2007.

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

David Cleary, appellee, pro se.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDot) appeals from an order of the Court of Common Pleas of Philadelphia County, First Judicial District (trial court) imposing a fine of $1,400 for its refusal to correct David Cleary's (Licensee) violations record.

This case was previously before our Court when PennDot filed an appeal from the trial court's determination that Penn-Dot was in contempt of its order to correct the driving record of Licensee. To briefly recap the facts, Licensee was issued various traffic citations to which he pled not guilty in Philadelphia Traffic Court. He notified PennDot that there was only one guilty verdict, and then he successfully appealed that verdict to the trial court. However, Philadelphia Traffic Court did not notify PennDot of the reversal of his guilty verdict, and PennDot sent Licensee

notices of suspension as a result of his conviction.[1] Licensee claimed he contacted PennDot several times to have his record corrected to reflect that he was never suspended, but it refused to do so even after he went to Philadelphia Traffic Court and obtained the information proving he had been found not guilty.

Licensee then filed a *nunc pro tunc* appeal with the trial court from the suspension notices because in attempting to deal with PennDot to correct his record, his timely appeal on the suspensions could no longer be filed.[2] Allowing the appeal, the trial court held a hearing at which PennDot reserved its right to quash the appeal, but never asserted that right. After the hearing, the trial court issued an order vacating PennDot's suspensions of Licensee's driving privilege and remanded the matter to PennDot to correct and update his driving record.[3] PennDot did not appeal this order.

Because PennDot never complied with the trial court's order by correcting Licensee's driving record to show that he never received any suspensions rather than showing that his suspensions were no longer in effect,[4] Licensee filed with the trial court a motion for civil contempt of court alleging that PennDot was in violation of the trial court's order. PennDot did not file an answer. A rule to show cause was issued, and a hearing was held. PennDot never filed an answer to the rule. That same date, the trial court granted Licensee's motion and directed PennDot to correct Licensee's driving record to indicate that all violations had been rescinded.[5] PennDot filed a motion for reconsideration, arguing only that Licensee's record had already been corrected in four of the cases as he was "not currently under suspension;" that the trial court had dismissed two of the cases so the issue was moot; and that Licensee had made a payment so his suspension had been deleted from his record. The trial court denied PennDot's motion, and this appeal followed.

Because PennDot had not changed its records to delete any evidence of suspension, Licensee filed a motion to quash appeal of civil contempt of court arguing that until sanctions were imposed on PennDot, the trial court's order of contempt was not a final appealable order. Citing *Borough of Slatington v. Ziegler*, 890 A.2d 8 (Pa. Cmwlth.2005), and *Foulk v. Foulk*, 789 A.2d 254 (Pa.Super.2001), both holding that there is not a final appealable order in a contempt proceeding, we quashed PennDot's appeal.

Licensee then filed a motion for sanctions with the trial court to which PennDot filed an answer. Without holding a hearing before imposing sanctions, the trial

---

1.  Licensee had received other citations that PennDot had on file, resulting in PennDot sending Licensee seven notices of suspension.

2.  A licensee has 30 days within receiving a suspension notice to file an appeal with the trial court pursuant to Section 1550 of the Vehicle Code, 75 Pa.C.S. § 1550.

3.  That order stated:
    AND NOW, TO WIT, THIS 4 day of APRIL, 2003, the DOT's order dated 5–17–02 is vacated and this matter is remanded to the department for correction and updating of the appellant's record.

4.  Licensee explained that this distinction was important because he was a truck driver by profession, and it could affect his ability to obtain work.

5.  Specifically, the order read as follows:
    AND NOW, TO WIT, THIS 3 day of JUNE, 2005, it is hereby Order, Adjudged and Decreed that the Motion for Civil contempt against the Commonwealth of Pennsylvania Department of Transportation is GRANTED, AND DEPT. IS DIRECTED TO CORRECT RECORD INDICATING ALL VIOLATIONS HAVE BEEN RESCINDED.

court entered an order imposing a sanction of $1,400, representing a fine of $200 in each case for PennDot's willful failure to comply with the directive set forth in the trial court's Order dated June 3, 2005. PennDot filed a motion for reconsideration, which was denied. This appeal by PennDot followed challenging the finding of contempt and the method by which sanctions were imposed.

■ PennDot first contends that it should not have been held in contempt because the trial court lacked subject matter jurisdiction to hear Licensee's *nunc pro tunc* appeal that resulted in the order directing the correction of Licensee's driving record because Licensee did not establish that there was fraud or a breakdown in the judicial or administrative process.[6] However, PennDot's contention confuses whether the trial court had jurisdiction with whether the trial court erred in granting the *nunc pro tunc* appeal. Trial courts always have subject matter jurisdiction to grant a "nunc pro tunc" appeal, and whether the trial court here erred in doing so is irrelevant because PennDot did not appeal that order. What PennDot is doing here is nothing more than collaterally attacking unappealed final orders. Given how many times that it has raised that issue successfully in defending against li-

censee "challenges," PennDot and its attorneys should be ashamed to even raise it as a defense to avoid complying with the trial court's contempt order.

■ PennDot also argues that the trial court did not have jurisdiction to make a finding of contempt and order PennDot to correct Licensee's driving record because he never availed himself of the administrative remedy provided to him by 67 Pa. Code 491.4(d)(1)(iii) (relating to requests for record review under 75 Pa.C.S. § 1516). PennDot points out that "[i]n general, a court lacks jurisdiction to address an action in law or in equity where an administrative remedy exists." *Campbell v. Department of Labor and Industry,* 80 Pa.Cmwlth. 558, 471 A.2d 1331 (1984). Not only is this another collateral attack on the April 4, 2003 unappealed order directing PennDot to correct Licensee's driving record, but PennDot is confused about what is a defense to failure to comply with a court order. Once contempt is sought, whether there is some possible administrative remedy available is irrelevant. What PennDot seems to have forgotten is that the trial court's directive was captioned "Order" and not "Suggestion," and the only issue involved is whether PennDot is in compliance with the trial court's order.[7]

---

**6.** "Courts have no power to permit a licensee to appeal *nunc pro tunc,* absent fraud or a breakdown in the administrative or judicial process caused through default of its officers." *Kovalesky v. Department of Transportation, Bureau of Driver Licensing,* 850 A.2d 26, 29 (Pa.Cmwlth.2004).

**7.** PennDot also argues that Licensee failed to prove that it did not properly maintain his driving record of suspensions that had already gone into effect pursuant to 75 Pa.C.S. § 1516(a). As best we can make out, PennDot is contending that listing six suspensions on Licensee's driving record is proper because he failed to show at the contempt hearing that each of his appeals was not filed after

the effective date of his suspension which precluded an accurate determination of what PennDot had done regarding his driving record "creat[ing] at least an inference that six of [Licensee's] suspensions should remain on his driving record." Again, PennDot's argument is based on its basic lack of understanding of what is at issue in a contempt proceeding— whether there has been compliance with the trial court ordering it to purge Licensee's record that his license had been suspended. We also note that PennDot now argues that there were only six suspensions, while in its motion for reconsideration of the June 3, 2005 Order, it listed seven suspensions.

■ Finally, even if the finding of contempt was proper, PennDot contends that the trial court's imposition of sanctions was improper because in order for a trial court to hold a party in contempt, a five-step process must first be completed, which in this case did not happen. That process includes: 1) a rule to show cause why attachment should not issue; 2) an answer and hearing; 3) a rule absolute; 4) a hearing on the contempt citation; and 5) an adjudication of contempt. *See Commonwealth ex rel Magaziner v. Magaziner,* 434 Pa. 1, 253 A.2d 263 (1969); *Deichert v. Deichert,* 402 Pa.Super. 415, 587 A.2d 319 (1991). As PennDot notes, an abbreviated process for finding contempt is permitted providing that notice of the violations alleged and an opportunity for explanation and defense are given, and where the merits of the underlying matter have already been heard and decided after a full hearing and which have been served on the contemnor. *Rouse Philadelphia, Inc. v. Ad Hoc '78,* 274 Pa.Super. 54, 417 A.2d 1248 (1979). "The essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard," *In re: Contempt of Court,* 849 A.2d 1207, 1211 (Pa.Super.2004), which PennDot was afforded in this case.

PennDot does not deny that it received a full hearing that resulted in a finding that it had not complied with the trial court's order, but argues that a *second* hearing was necessary before sanctions could have been imposed. The purpose of a second hearing is to determine whether the party has complied with the contempt order. *Lachat v. Hinchliffe,* 769 A.2d 481 (Pa.Super.2001). In this case, the trial court did not hold a second hearing because PennDot did not allege in its answer to the contempt citation that it was in compliance with the order or was going to come into compliance with the order, but merely reiterated the reasons that it *did not have to come into compliance* for the same reasons that it raised here. Consequently, because it was continuing to maintain, as it does here, that it is not obligated to expunge from Licensee's driving record any reference to suspension and obdurately continues to defy the trial court's order, the failure to hold the second hearing was not fatal.[8]

Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 23rd day of *March,* 2007, the order of the Court of Common Pleas of Philadelphia County, First Judicial District, dated July 20, 2006, is affirmed.

---

**8.** Although PennDot contends that the trial court's orders for which it was held in contempt for non-compliance were not "definite, clear and specific, leaving no doubt or uncertainty regarding the prohibited conduct," it never raised this issue before a finding of contempt was filed. In fact, it did not file an answer and its motion for reconsideration never contended that the order was not specifically definite, but instead argued that it complied when it changed its record that Licensee's license "was not currently under suspension" rather than the suspension had been rescinded.