J-A11016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| K.T. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| P.H. | |
| Appellant | No. 1806 MDA 2016 |

Appeal from the Order Entered September 27, 2016
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2010 FC 41013

BEFORE: SHOGAN, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED JULY 20, 2017**

P.H. ("Father") appeals, *pro se*, from the September 27, 2016 order[1] of the Lackawanna County Court of Common Pleas finding him in contempt and ordering him to pay K.T.'s ("Mother") counsel fees. We affirm.

The trial court set forth the factual and procedural background as follows:

> [T]his case began in 2010 when [Mother] filed for a Petition for Custody of [C.H. ("Child")]. Thereafter, Mother and [Father] were Ordered to attend mediation. Pursuant

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Father's notice of appeal to this Court states he is appealing from the order "entered in this matter on the 27th day of October, 2016." Because there is no order dated October 27, 2016 in the certified record and in his brief Father states the order in question is the September 27, 2016 order, **see** Father's Br. at 1, it is clear that Father intended to appeal from the September 27, 2016 order.

to a Stipulated Court's Order dated January 11, 2011, the parties have shared legal custody of the minor child with Mother having primary physical custody subject to Father's periods of partial physical custody every other weekend. There were numerous Petitions filed thereafter.[1]

[1] It is necessary for this Court to note the lengthy procedural history in this matter as it shows the litigious nature of the parties and the level of conflict that exists between Mother and Father.

Father filed a Petition for Modification of Physical Custody during the Minor Child's Summer Vacation in April 2015. Oral arguments were held during Motion Court on [Father]'s Motion for Special Relief in Custody and [Mother]'s Answer for Special Relief and New Matter. At that time, this Court scheduled a hearing on [Father]'s Petition for Modification of Physical Custody for September. Numerous continuances were filed thereafter. On April 18, 2016, this Jurist and the attorneys spent numerous hours discussing a settlement. Subsequently, a hearing on the Petition for Modification was held on April 25, 2016. The June 9, 2016 Order states "This custody schedule shall remain in place for at least two (2) years and neither party shall file any petition and/or motion to change said schedule for two (2) years except for an actual emergency (i.e. criminal charges). Any motion and/or petition filed that does not rise to an emergency level shall result in contempt of this Court's Order." Further, the Order states "Any frivolous motions will not be tolerated by this Court." Both parties, under oath, agreed to the terms of the Order.

Furthermore, this Court addressed the summer vacation schedule in the June 9, 2016 Order which provided that Mother shall have custody of the minor child June 9 at 5:00 p.m. until June 12 at 5:00 p.m., June 26 at 5:00 p.m. until July 10 at 5:00 p.m., and July 21 at 5:00 p.m. until August 7 at 5:00 p.m. Father shall have custody of the minor child June 12 at 5:00 p.m. until June 26 at 5:00 p.m., July 10 at [5:]00 p.m. until July 21 at 5:00 p.m., and August 7 at 5:00 p.m. until two days prior to school starting at 5:00 p.m. During the hearing, the Court and counsel were informed that school began on the week of August 22, 2016. Additionally before this Court issued the June 9, 2016 Order, counsel for the parties reviewed and

approved the Order. Thereafter, Mother filed an Oral Motion to Clarify to the Order based on [s]chool [s]tarting five (5) days later than was known at the time of the hearing. A conference was held and this Court clarified the June 9, 2016 Order by issuing the August 2, 2016 Order in which the Court divided the extra vacation days between the parents.

Thereafter, Father filed a Petition for Contempt, in which he averred that Mother was in contempt of this Court's June 9, 2016 order. Mother filed a Response to said Motion, in which she included a Counterclaim Petition for Contempt. This Jurist heard oral arguments on both petitions on September 26, 2016. Subsequently, this Court issued the September 27, 2016 Order.

Opinion, 11/28/16, at 1-3 ("1925(a) Op.") (internal citations omitted).

In the September 27, 2016 order, the trial court: (1) denied Father's petition for contempt, finding that Mother's oral motion to clarify was not in violation of the June 9, 2016 order; (2) granted Mother's petition for contempt, finding Father violated the June 9, 2016 order "by filing the frivolous August 29, 2016 Petition for Contempt knowing during negotiations with counsel regarding the June 9, 2016 Order and before this Court entered the [order] that school started five . . . days later than the court was originally advised of"; (3) ordered that Father could purge himself of the contempt finding by not filing further frivolous motions for one year; and (4) ordered Father to pay Mother $2,000 in counsel fees within 30 days. Order,

J-A11016-17

9/27/16. On October 28, 2016, Father timely filed his notice of appeal.[2]

The trial court did not order Father to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement. On November 28, 2016, it filed a Rule 1925(a) opinion.

Father raises the following issues on appeal:

A. Whether Judge Trish Corbett abused her discretion in imposing sanctions against [Father] for contempt and violation of 42 Pa.C.S.A. § 2503(7) in the absence of credible evidence establishing that [he] engaged in willful violation of a court order or any vexatious, obdurate or dilatory conduct, such as "entrapment" or hiding information regarding the end of his daughter's summer vacation schedule?

B. Whether Judge Trish Corbett abused her discretion, acting clearly in excess of her jurisdiction, by imposing an injunction against [Father], prohibiting him from filing poorly and vaguely or even utterly undefined "frivolous" motions or pleadings, or for that matter "non-emergency" pleadings?

C. Whether Judge Trish Corbett abused her discretion, acting clearly in excess of her jurisdiction, enjoining [Father] from filing any motions or pleading for two years concerning his shared custody and visitation schedule with his daughter?

D. Whether Judge Trish Corbett abused her discretion by entering bo[t]h of the orders, subject of this appeal, without a separate hearing or making any effort to comply with the multiple procedural safeguards, including consideration of all alternative safeguards

_____

[2] Because the docket entry for September 27, 2016 does not include a Pa.R.Civ.P. 236(b) notation that notice of an order was provided to the parties, the date of commencement of the 30-day appeal period is not apparent from the record. **See** Pa.R.A.P. 108. Thus, we are constrained to find Father's petition timely filed. **See** Trial Ct. Docket, 9/27/16 Entry.

against an imminent real harm or injury against a compelling government or public interest, prior to imposing any prior restraint, as outlined in ***Nebraska Press Association v. Stuart***, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)[   ](Also cited in ***Commonwealth v. Lambert***, [723 A.2d 684, 689 (Pa.Super. 1998)]?

E. Whether the trial court committed numerous procedural errors, thereby depriving [Father] of his right to due process under the law and abandoned her role as neutral arbiter by:

(i)   denying his Motion for Recusal summarily and without proper argument or presentation, and requiring him to answer to [Mother]'s "Counterclaim" in contempt without proper notice or opportunity; (See Exhibit E: Transcript of Hearing held on September 26, 2016, page 12 line 20- page 13, line 15)[3]

(ii)   hopelessly confusing the procedural and substantive distinction between civil and criminal contempt, and improperly adjudicating [Mother]'s 20 September 2016, Cross-Motion for Contempt without a separate "rule to show cause" and discrete and independent hearing on the issues raised in [Mother]'s "Counterclaim[7]["; ]

> [7] Procedural due process—which is essential in a civil contempt adjudication—requires a five-step, two-hearing procedure that includes: (1) a rule to show cause why an attachment of the person should not issue; (2) an answer and hearing; (3) a rule absolute (arrest); (4) a hearing on the contempt citation; and (5) an adjudication. ***Stewart v. Foxworth***, 65 A.3d 468, 2013 PA Super 91 (19 April 2013). The essential due process requisites for a finding of civil contempt are notice and an opportunity to

---

[3] Father has abandoned this issue on appeal. Father's Br. at 10 n.6.

be heard. ***Cleary v. Department of Transportation***, 919 A.2d 368 (Pennsylvania Superior Court 23 March 2007).

(iii)    failing to conduct a proper hearing in civil contempt, comingling civil and criminal contempt, in violation of the Pennsylvania rule as expressed in ***Schnabel Associates, Inc. v. Building and Const. Trades Council of Philadelphia and Vicinity, AFL-CIO***, 338 Pa.Super. 376, 487 A.2d 1327 (Superior Court of Pennsylvania, 4 January 1985)[;]

(iv)    imposing criminal contempt sanctions on [Father] without affording him the requisite due process protections guaranteed by the United States and Pennsylvania Constitutions as outlined in ***Nebraska Press Association v. Stuart***, cited above;

(v)     improperly punishing [Father] by imposing a "civil contempt" injunction against him against filing "frivolous" and/or "non-emergency" motions concerning his daughter's custody for a period of two years[;]

(vi)    [e]ffectively imposing an unreasonable burden of proof on [Father] to establish that his motions and pleadings are not frivolous, rather than requiring [Mother] to establish that any of [Father]'s actions fit within any category of either "frivolous" or "non-emergency" defined and established by Pennsylvania law;

(vii)   by finding "entrapment" and intent as predicates for civil contempt - the sole substantive evidence supporting its conclusion being highly confusing hearsay statements regarding the parties' understanding and information concerning the minor child, in whose interest these proceedings allegedly take place.  These statements should have been excluded as inadmissible hearsay.

F. Whether the trial court abused its discretion when it imposed sanctions in the total amount of $2,000.00

- 6 -

without any testimony concerning attorney time or effort at the hearing, and without competent evidence to establish the reasonableness of the amount in circumstances where the amount imposed bore no reasonable relationship to any loss incurred and hence was punitive in nature?

Father's Br. at 11-14.[4]

_____

[4] We note that Father's brief does not comply with the dictates of Pennsylvania Rule of Appellate Procedure 2116(a), which requires that the statement of questions involved "state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail." Indeed, as stated by the Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to **any** of them . . . [and] it is [this] presumption . . . that reduces the effectiveness of appellate advocacy.

Aldisert, "The Appellate Bar: Professional Competence and Professional Responsibility–A View From the Jaundiced Eye of the Appellate Judge," 11 Cap. U.L. Rev. 445, 458 (1982) (emphasis in original); *accord Commonwealth v. Robinson*, 864 A.2d 460, 479 n.28 (Pa. 2004).

We further note that Father has failed to include an "Argument" section in his brief in violation of Pennsylvania Rule of Appellate Procedure 2111 and 2119. Although the Rules of Appellate Procedure allow this Court to quash or dismiss an appeal if the defects in the brief are substantial, *see* Pa.R.A.P. 2101, we decline to find waiver on this basis given that the defects do not impede our ability to conduct a meaningful review, *see In re R.D.*, 44 A.3d 657, 674 (Pa.Super. 2012) ("[W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.") (quotation omitted).

We will address Father's issues out of order for ease of disposition. In Father's second and third issues and in portions of his fourth and fifth issues he is challenging the June 9, 2016 order.

Generally, "an appeal may be taken as of right from any final order." Pa.R.A.P. 341(a). "A final order is any order that . . . disposes of all claims and of all parties." Pa.R.A.P. 341(b). "[A] custody order is considered final and appealable only if it is both: (1) entered after the court has completed its hearings on the merits; and (2) intended by the court to constitute complete resolution of the custody claims pending between the parties." **Beltran v. Piersody**, 748 A.2d 715, 717 (Pa.Super. 2000) (quoting **G.B. v. M.M.B.**, 670 A.2d 714, 720 (Pa.Super. 1996) (*en banc*)). Thereafter, an appellant must file his or her notice of appeal "within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903.

The trial court entered the June 9, 2016 custody order after conducting a full hearing on April 25, 2016. At the time, there was no hearing pending or any issue remaining to be resolved. Further, it is evident from the language of the order that it was intended to be a complete resolution of the case. **See** Order, 6/9/16, at 6 ("This custody schedule shall remain in place for at least two (2) years and neither party shall file any petition and/or motion to change said schedule for two (2) years except for an **actual** emergency (i.e. criminal charges.")) (emphasis in original). Therefore, the trial court's June 9, 2016 order was final and appealable.

Because Father did not file a notice of appeal within 30 days of the entry of this order, Father has waived any challenge to the June 9, 2016 order.[5]

In Father's first issue, he contends that the trial court abused its discretion in finding him in contempt of the June 9, 2016 order. Father claims that there was insufficient evidence to establish that he "engaged in willful violation of a court order or any vexatious, obdurate or dilatory conduct, such as 'entrapment' or hiding information regarding the end of his daughter's summer vacation schedule." Father's Br. at 11.

When reviewing a trial court's finding of contempt, our scope of review "is very narrow." *Garr v. Peters*, 773 A.2d 183, 189 (Pa.Super. 2001). We review the trial court's finding for a clear abuse of discretion. *Id.* We have explained that "[e]ach court is the exclusive judge of contempts against its process." *Id.* (quoting *Fatemi v. Fatemi*, 537 A.2d 840, 846 (Pa.Super. 1988)). "The contempt power is 'essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute.'" *Id.* (quoting *Marian Shop, Inc. v. Baird*, 670 A.2d 671, 673 (Pa.Super. 1996)). "When reviewing an appeal from a contempt order, the

---

[5] Even if Father had not waived his claims challenging the June 9, 2016 order, we would conclude they are meritless. The trial court was within its right to prohibit the parties from filing frivolous and/or non-emergency petitions. The trial court did not completely bar all claims the parties may have; it merely limited them in light of "the litigious nature of the parties and the level of conflict that exists between Mother and Father." 1925 Op. at 2 n.1.

appellate court must place great reliance upon the discretion of the trial judge." *Id.* We have further stated that

> [a] court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order . . . . To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the contemnor has the present ability to comply with the order.

*Id.* (quoting ***Sinaiko v. Sinaiko***, 664 A.2d 1005, 1009 (Pa.Super. 1995)).

Here, the trial court found:

> This Court's June 9, 2016 Order regarding the filing of petitions for two (2) years is clear. The language states, "Neither party shall file any petition and/or motion to change said schedule for two (2) years except for an actual emergency (i.e. criminal charges)." Mother's Motion to Clarify was not a filing to change custody, but a simple clarification [of] this Court's Order. Furthermore, Father admitted during oral arguments on September 26, 2016 that he was aware when school began prior to this Court entering the June 9, 2016 Order, but failed to inform Mother or the Court. Thus, this Court found that Mother was not in Contempt of the June 9, 2016 Order.
>
> Moreover, the June 9, 2016 Order states, "Any frivolous motions will not be tolerated by this Court." Father is in clear contempt of that portion of this Court's Order. During oral arguments and testimony held before the Jurist on September 26, 2016, Father admitted that he was aware that school began later than both the Court and the parties believed before this Court entered the June 9, 2016

- 10 -

Order.[6]  Yet, he failed to inform the Court or Mother of the start date, but filed a frivolous Petition for Contempt. As discussed above, Mother's Motion to Clarify was not a motion to change the custody schedule, but to clarify it. This Court finds that Father's actions were entrapment. He withheld the school information before the June 9, 2016 Order was entered, which required Mother to file a Motion to Clarify.  Therefore, this Court held that Father is in contempt of the June 9, 2016 regarding frivolous motions because he knew of the start date of school, failed to inform this Court of said date, and attempted to have this Court hold Mother in contempt for clarifying the Order after she became aware of the new start date.

1925(a) Op. at 4-5 (internal citations omitted); *see also* N.T., 9/26/16, at 39.

We conclude that the trial court did not abuse its discretion in finding Father in contempt of the June 9, 2016 order.

_____

[6] The following exchange occurred during the September 26, 2016 hearing:

[FATHER]:  This is the school calendar.  It was up on the website prior to our executing our July [9]th court order.

[MOTHER'S COUNSEL]:  How do we know that?

[FATHER]:  I'm going to testify to it, Your Honor.  I looked at it three days prior to June [9]th.  I called and asked them when it was up.  They said three days prior to me calling.  So it was up for six -- at least up for six days prior to the order being executed.

[MOTHER'S COUNSEL]:  So, wait, you're saying you knew about it, when?

[FATHER]:  Approximately the 25th or so of May.

N.T., 9/26/16, at 26.

In Father's fourth issue, and in the portions of his fifth issue challenging the September 27, 2016 order, Father claims the trial court erroneously confused criminal and civil contempt. He further claims that the trial court erred by entering the September 27, 2016 order without conducting a hearing and by not issuing an order to show cause or other advance notice.

We have explained that the difference between civil and criminal contempt is their purpose. *Warmkessel v. Heffner*, 17 A.3d 408, 414 (Pa.Super. 2011).

> If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of some private party, proceedings to enforce compliance with the decree of the court are civil in nature.

*Id.* (quoting *Stahl v. Redcay*, 897 A.2d 478, 486 (Pa.Super. 2006)).

"When contempt is civil, 'a court must impose conditions on the sentence so as to permit the contemnor to purge himself.'" *Gunther v. Bolus*, 853 A.2d 1014, 1018 (Pa.Super. 2004) (quoting *Cecil Township v. Klements*, 821 A.2d 670, 675 (Pa.Commw. 2003)). The purpose "is remedial." *Diamond v. Diamond*, 792 A.2d 597, 600 (Pa.Super. 2002) (quoting *Lachat v. Hinchcliffe*, 769 A.2d 481, 488 (Pa.Super. 2001)). "Judicial sanctions are employed to coerce the defendant into compliance

with the court's order, and in some instances, to compensate the complainant for losses sustained." *Id.* (quoting *Lachat*, 769 A.2d at 488).

Here, we agree with the trial court that the contempt was civil in nature. 1925(a) Op. at 3. The June 9, 2016 order stated that "[a]ny motion and/or petition filed that does not rise to an emergency level shall result in contempt of this Court's Order." Order, 6/9/16. The order further stated that "frivolous motions w[ould] not be tolerated." *Id.* The contempt adjudication was not meant to punish Father, but to enforce compliance with the June 9, 2016 order – that is, to prevent Father from filing non-emergency or frivolous motions and petitions. Moreover, the September 27, 2016 order indicated that Father could purge himself by not filing another frivolous motion for the next year. Thus, the contempt was civil in nature. *See Warmkessel*, 17 A.3d at 414; *Diamond*, 792 A.2d at 600.

We must next determine whether the trial court complied with the procedural requirements for a finding of contempt. Trial courts generally follow a five-step process: "(1) a rule to show cause why an attachment should not issue, (2) an answer and hearing, (3) a rule absolute, (4) a hearing on the contempt citation, and (5) an adjudication." *Wood v. Geisenhemer-Shaulis*, 827 A.2d 1204, 1208 (Pa.Super. 2003) (quotation omitted). However, we have held that "[f]ulfillment of all five factors is not mandated." *Id.* "[W]hen the contempt proceedings are predicated on a violation of a court order that followed a full hearing, due process requires

- 13 -

no more than notice of the violations alleged and an opportunity for explanation and defense." *Id.* (quoting *Diamond*, 792 A.2d at 601).

Here, the June 9, 2016 order followed a full and thorough hearing on April 25, 2016. Thereafter, on September 20, 2016, Mother filed and served a response to Father's petition, which included a contempt petition and provided notice of Father's alleged violations of the June 9, 2016 order.[7] At the September 26, 2016 hearing,[8] in which Father was acting *pro se*, Father

_____

[7] At the September 26, 2016 hearing, the following exchange took place:

> [MOTHER'S COUNSEL]: Right. And, Your Honor, just for the record, [the petition for contempt] was e-mailed to him, because he's been e-mailing everything to me, on the day it was filed by my office. And I will give you the verification -- the filing date is September 20th.
>
> [COURT]: Okay. Well that would, with today being September 26th –
>
> [MOTHER'S COUNSEL]: It was Wednesday of last week it was filed.
>
> [COURT]: That would be sufficient notice for that to be heard. All right.

N.T., 9/26/16, at 13; *see also* Trial Ct. Docket, 9/20/16 Entry.

[8] At the outset of the September 26, 2016 proceeding, the trial court clarified that while the proceeding was listed as "a hearing," the trial court was prepared to hear argument from counsel. However, during the course of the proceeding, the trial court decided to also receive limited testimony. *See* N.T., 9/26/16 at 13 ("[COURT]: Let's proceed on -- and as -- I mean, it's listed as a hearing, but it's really argument."), 30 ("[COURT]: . . . I haven't taken testimony up to this point, because I was considering oral argument, but I am going to take testimony on this limited point.").

had an extensive opportunity to explain and defend himself and did in fact exercise that opportunity.[9]  We conclude the trial court complied with the necessary procedural requirements, because Father had notice of the contempt allegations and an opportunity to respond.  *See id.* at 1208.

Father's final issue is that the trial court erred in ordering him to pay Mother's counsel fees without conducting a hearing regarding counsel's time and effort.

_____

[9] *See supra* note 6.  Further, the following exchange occurred:

> [COURT]:  . . .  But I just want to be clear.  You're telling me now, as you sit here today, that you were aware back in May --
>
> [FATHER]:  Late May.
>
> [COURT]:  -- what the actual start date was for the school?
>
> [FATHER]:  It was on the school website, Your Honor.
>
> [COURT]:  When you knew that we were unclear as to what the actual start date was?  So is it that you were surreptitiously trying to keep that to yourself?
>
> [FATHER]:  No, Your Honor.  Was it my responsibility to notify [Mother] of the start date?
>
> [COURT]:  But officers of the court have an obligation to notify the Court.  Did you notify your attorney?
>
> [FATHER]:  I did not, Your Honor.

N.T., 9/26/16 at 29.  Father also stated, "I have no legal obligation to tell the Court or [Mother] that I knew that school was starting six days later.  I have no obligation to do that."  *Id.* at 38.

Father has waived this issue. He fails to develop this claim in the argument section, or in any other part, of his brief. Further, he includes no authority to support his assertion that imposition of counsel fees was inappropriate or that the trial court should have held a hearing. ***See Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2017