DEPARTMENT OF THE AUDITOR GENERAL, Commonwealth of Pennsylvania; and Auditor General Robert P. Casey, Jr., Petitioner

v.

PENNSYLVANIA STATE POLICE, Commonwealth of Pennsylvania; and Commissioner Jeffrey B. Miller, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2003.
Decided March 8, 2004.

Richard D. Spiegelman and Sally A. Ulrich, Harrisburg, for petitioner.

Leslie A. Miller, Harrisburg, for respondents.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge and SIMPSON, Judge.

OPINION BY Judge FRIEDMAN.

The Department of The Auditor General, Commonwealth of Pennsylvania, and Auditor General Robert P. Casey, Jr., (together, Auditor General) have filed an application for summary relief (Application) in connection with a petition for review (Petition) of the refusal of the Pennsylvania State Police, Commonwealth of Pennsylvania, and Commissioner Jeffrey B. Miller (together, PSP) to provide the Auditor General with the names, addresses and release dates of sexual offenders registered with the PSP under the Registration of Sexual Offenders Act (Megan's Law), 42 Pa.C.S. §§ 9791–9799.7. We deny summary relief.

By letter dated May 7, 2003, the Auditor General informed the PSP that it was commencing a performance audit to determine the Commonwealth's compliance with Megan's Law. On August 4, 2003, the Auditor General requested in writing that the PSP provide the Auditor General with the names, current addresses and release dates of those sexual offenders listed on the Megan's Law registry who were convicted between July 9, 2000, and June 10, 2003. (Petition, ¶¶ 9, 16.)

The PSP informed the Auditor General on August 15, 2003, and again on September 30, 2003, that the PSP would not provide the requested information due to restrictions in the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101–9183. The PSP asserted that the information sought by the Auditor General

is protected "investigative information" under sections 9102 and 9106(c)(4) of the CHRIA, 18 Pa.C.S. §§ 9102 and 9106(c)(4), and that the CHRIA authorizes the PSP to disseminate such information only to criminal justice agencies. (Petition, ¶¶ 18–19.)

On October 28, 2003, the Auditor General filed its Petition, seeking: (1) a declaratory judgment that the names, addresses and release dates of individuals registered as sexual offenders with the PSP under Megan's Law are not "investigative information" prohibited from disclosure to noncriminal justice agencies under sections 9102 and 9106(c)(4) of the CHRIA; (2) an order directing the PSP to provide the Auditor General with the requested information; and (3) such further relief as may be just under the circumstances. (Petition at 7.) On the same date, the Auditor General filed the Application pursuant to Pa. R.A.P. 1532(b).[1]

The PSP has filed an answer to the Petition, with new matter. The PSP alleges, *inter alia*, that: (1) the Auditor General lacks authority to conduct a performance audit of the PSP's compliance with Megan's Law; and (2) Megan's Law and its implementing regulations do not authorize the PSP to disclose the requested information to the Auditor General. (PSP's New Matter, ¶¶ 56, 59.) The Auditor General has filed an answer to the new matter. This court has heard argument on the matter; thus, the Auditor General's Application is now ripe for disposition.

### I. Declaratory Judgment

Any person whose rights or legal relations are affected by a statute may have the court determine any question of construction arising under the statute and

---

1. "At any time after the filing of a petition for review in an appellate or original matter the court may on application enter judgment if

the right of the applicant thereto is clear." Pa. R.A.P. 1532(b).

obtain a declaration of his or her rights or legal relations. Section 7533 of the Declaratory Judgments Act (DJA), 42 Pa.C.S. § 7533. However, a court may refuse to render a declaratory judgment where such judgment would not terminate the uncertainty or controversy giving rise to the proceeding. Section 7537 of the DJA, 42 Pa.C.S. § 7537.

As indicated above, the Auditor General seeks a judgment declaring that the names, addresses and release dates of individuals registered with the PSP as sexual offenders under Megan's Law are not "investigative information" as defined in section 9102 of the CHRIA. The Auditor General believes that the rendering of such a judgment would terminate its controversy with the PSP, and the PSP would be required to provide the Auditor General with the information requested for the Auditor General's performance audit. Thus, in addition to the declaratory judgment, the Auditor General seeks an order directing the PSP to disclose the information.

However, if this court were to render a declaratory judgment in favor of the Auditor General with respect to the "investigative information" issue, it would not terminate the controversy between the Auditor General and the PSP. Before this court could issue an order directing the PSP to provide the requested information, we first would have to consider the issues raised by the PSP in new matter opposing the Auditor General's Petition and determine whether the Auditor General has the authority to conduct a performance audit of

the PSP's compliance with Megan's Law and whether Megan's Law and its implementing regulations prohibit disclosure of the requested information to the Auditor General.

Because the controversy between the Auditor General and the PSP involves legal issues that would remain following the grant of the declaratory judgment sought, it is apparent that we may refuse to render a judgment and deny summary relief on that basis alone. 42 Pa.C.S. § 7537. However, the "investigative information" issue is a necessary component to the ultimate resolution of the controversy between the Auditor General and the PSP. Moreover, the additional issues are before this court as new matter; therefore, in a proper exercise of our discretion, we shall address the "investigative information" issue. For the following reasons, we conclude that the information requested by the Auditor General is "investigative information" within the meaning of the CHRIA. As such, the PSP properly refused to provide it to the Auditor General.

## II. The CHRIA

The CHRIA provides for "the collection, compilation, maintenance and dissemination of criminal history record information by the [PSP]." 18 Pa.C.S. § 9102. The CHRIA defines "criminal history record information" as follows:

> **"Criminal history record information."** Information collected by criminal justice agencies [2] concerning indi-

2. The CHRIA defines "criminal justice agency" as follows:

> **"Criminal justice agency."** Any court, including the minor judiciary, with criminal jurisdiction or any other governmental agency, or subunit thereof, created by statute or by the State or Federal constitutions, specifically authorized to perform as its principal function the administration of

criminal justice, and which allocates a substantial portion of its annual budget to such function. Criminal justice agencies include, but are not limited to: organized State and municipal police departments, local detention facilities, county, regional and State correctional facilities, probation agencies, district or prosecuting attorneys, parole boards, pardon boards and such agen-

viduals, and arising from the initiation of a criminal proceeding, consisting of [1] identifiable descriptions, [2] dates and notations of arrests, [3] indictments, informations or other formal criminal charges and [4] any dispositions [3] arising therefrom. *The term does not include* intelligence information,[4] *investigative information* or treatment information, including medical and psychological information, or information and records specified in section 9104 (relating to scope).[5]

18 Pa.C.S. § 9102 (emphasis added). The PSP may disseminate "criminal history record information" to individuals or non-criminal justice agencies upon request, but, in doing so, the PSP must extract all information relating to the initiation of criminal proceedings where three years have elapsed since the arrest, where no conviction has occurred and where no proceedings are pending seeking a conviction. Section 9121(b) of the CHRIA, 18 Pa.C.S. § 9121(b).

The PSP may *not* include "investigative information" in the central repository. Section 9106(a) of the CHRIA, 18 Pa.C.S. § 9106(a). In fact, the CHRIA explicitly states that *nothing* in the CHRIA applies to "investigative information." Section 9105 of the CHRIA, 18 Pa.C.S. § 9105. Thus, unlike "criminal history record information," the PSP may *not* disseminate "investigative information" to non-criminal justice agencies, such as the Auditor General.[6] The CHRIA defines "investigative information" as follows:

cies or subunits thereof, as are declared by the Attorney General to be criminal justice agencies as determined by a review of applicable statutes and the State and Federal constitutions or both.
18 Pa.C.S. § 9102. The Auditor General does not claim to be a criminal justice agency.

3. The CHRIA defines the word "disposition" as follows:
Information indicating that criminal proceedings have been concluded, including information disclosing that police have elected not to refer a matter for prosecution, that a prosecuting authority has elected not to commence criminal proceedings or that a grand jury has failed to indict and disclosing the nature of the termination of the proceedings; or information disclosing that proceedings have been indefinitely postponed and also disclosing the reason for such postponement. Dispositions of criminal proceedings in the Commonwealth shall include, but not be limited to, acquittal, acquittal by reason of insanity, pretrial probation or diversion, charge dismissed, guilty plea, nolle prosequi, no information filed, nolo contendere plea, convicted, abatement, discharge under rules of the Pennsylvania Rules of Criminal Procedure, demurrer sustained, pardoned, sentence commuted, mistrial-defendant discharged, discharge from probation or parole or correctional supervision.

18 Pa.C.S. § 9102.

4. "Intelligence information" is: "Information concerning the habits, practices, characteristics, possessions, associations or financial status of any individual compiled in an effort to anticipate, prevent, monitor, investigate or prosecute criminal activity." 18 Pa.C.S. § 9102.

5. Section 9104 of the CHRIA, 18 Pa.C.S. § 9104, specifies that court dockets, police blotters, press releases and the information contained therein shall be considered public records.

6. Section 9106(c)(4) of the CHRIA, 18 Pa.C.S. § 9106(c)(4) (emphasis added), provides as follows:
(4) Investigative and treatment information shall *not* be disseminated to any department, agency or individual *unless* the department, agency or individual requesting the information is a *criminal justice agency* which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.
The CHRIA allows a criminal justice agency to maintain "criminal history record information" in records containing "investigative information." Section 9121(d) of the CHRIA,

"Investigative information." Information assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information.

18 Pa.C.S. § 9102.

█ The PSP contends that the information that the Auditor General seeks here has been assembled as a result of the performance of inquiries into sexually violent offenses which ultimately led to convictions. We note that all "criminal history record information" is assembled as a result of the performance of inquiries into criminal conduct. What distinguishes "criminal history record information" from "investigative information" is that the former arises from the initiation of a criminal proceeding, i.e., an arrest,[7] whereas the latter is composed of information assembled as a result of the performance of an inquiry into a crime that is still under investigation.[8]

The question before us, then, is whether the Megan's Law sexual offenders registry is assembled as a result of the performance of inquiries into crimes still under investigation.[9]

### III. Megan's Law

Megan's Law provides that individuals convicted of sexually violent offenses are required to register with the PSP upon release from incarceration, upon parole from a correctional facility or upon commencement of a sentence of intermediate punishment or probation. Sections 9795.1 & 9795.2(a)(1) of Megan's Law, 42 Pa.C.S. §§ 9795.1 & 9795.2(a)(1). The individuals must provide the PSP with: (1) all current or intended residences; (2) all information concerning current or intended employment; and (3) all information concerning current or intended enrollment as a student. Section 9795.2(a)(1) of Megan's Law, 42 Pa.C.S. § 9795.2(a)(1).

The PSP has a duty to provide registration information to the chief law enforcement officers of the police departments having primary jurisdiction of the municipalities in which an offender resides, is employed or is enrolled as a student. Section 9799.1(4) of Megan's Law, 42 Pa.C.S. § 9799.1(4). The registration information includes the specific addresses at which the individuals will reside, be employed or be enrolled as students. Section 9795.2(c) of Megan's Law, 42 Pa.C.S. § 9795.2(c).

As for public access to the information, Megan's Law distinguishes between sexual

---

18 Pa.C.S. § 9121(d). However, in such cases, where the criminal justice agency is asked to disseminate "criminal history record information," the criminal justice agency must extract and disseminate only the "criminal history record information." *Id.*

7. We note that, within forty-eight hours of an arrest, the individual's fingerprints must be forwarded to the central repository. Section 9112(a) of the CHRIA, 18 Pa.C.S. § 9112(a).

8. Thus, once there has been an arrest and the criminal proceedings have begun, information about a case becomes "criminal history record information" to the extent that it falls within the statutory definition. In other

words, the initiation of criminal proceedings does not necessarily transform all "investigative information" into "criminal history record information." As indicated above, "criminal history record information" includes only: (1) identifiable descriptions; (2) dates and notations of arrests; (3) the criminal charges; and (4) dispositions.

9. The CHRIA and Megan's Law are statutes *in pari materia* because they both relate to information that the PSP collects and disseminates about individuals involved in criminal proceedings. Thus, the statutes must be construed together, if possible, as one statute. Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932.

offenders and sexually violent predators (SVP). A SVP is a person who is likely to engage in predatory sexually violent offenses upon release from custody.[10] Section 9795.4 of Megan's Law, 42 Pa.C.S. § 9795.4. The intention of the General Assembly in enacting Megan's Law was to protect the people of the Commonwealth from a SVP by providing notification to a community regarding a SVP who is about to be released from custody. Section 9791(b) of Megan's Law, 42 Pa.C.S. § 9791(b).

Thus, notwithstanding the dissemination restrictions in the CHRIA, local police departments, or the PSP where no municipal police jurisdiction exists, must give notice of a SVP's name and address to: (1) crime victims; (2) neighbors of the SVP; (3) the director of the county children and youth service agency; (4) public and private schools; (5) day care centers; and (6) colleges or universities. Sections 9797 & 9798 of Megan's Law, 42 Pa.C.S. §§ 9797 & 9798. The public may obtain information about a SVP upon request. Section 9798(d) of Megan's Law, 42 Pa.C.S. § 9798(d).

■ Although Megan's Law authorizes dissemination of the name and address of a SVP to the public, the statute does *not* authorize the release of such information about a sexual offender, i.e., a person who is *not* likely to engage in predatory sexual-

ly violent offenses upon release from custody.[11] Megan's Law requires only that law enforcement entities keep track of non-SVP sexual offenders by verifying their residences. With its primary focus on SVPs, Megan's Law does not state a particular reason for tracking non-SVP sexual offenders in this manner. Nevertheless, the PSP has understood the registry of sexual offenders to be an investigative tool for use in the performance of inquiries into Megan's Law offenses still under investigation.[12]

Although the registry of sexual offenders may serve other purposes,[13] we agree with the PSP that the registry serves as an investigative tool. Indeed, the possibility exists that a non-SVP sexual offender may engage in predatory sexually violent offenses upon release from custody. Thus, in performing inquiries into unsolved Megan's Law offenses, law enforcement officers may have good reason to question a non-SVP sexual offender who resides or works in the vicinity of a sexually violent offense or who attends school nearby.

Accordingly, we conclude that the names, addresses and release dates of non-SVP sexual offenders in the Megan's Law registry constitute information assembled by the PSP under Megan's Law as a result of the performance of inquiries into unsolved Megan's Law offenses, which makes the information "investigative information" under the CHRIA. We acknowledge that

10. A "sexually violent predator" is a person who is determined to be such "due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." Section 9792 of Megan's Law, 42 Pa.C.S. § 9792.

11. Crime victims have the right to be notified of the release of a sexual offender pursuant to section 201 of the Crime Victims Act, Act of November 24, 1998, P.L. 882, *as amended,* 18 P.S. § 11.201. *See* section 9797(b) of Megan's Law, 42 Pa.C.S. § 9797(b). However, crime

victims do *not* have the right to receive notice of the sexual offender's address.

12. *See* 37 Pa.Code § 56.3(e)(4) (stating that chief law enforcement officers and the PSP shall utilize sexual offender information from the registry strictly as an investigative tool and shall not disseminate such information).

13. Some courts have suggested that the registry may serve to deter recidivism. *See Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616 (1999).

the information is not a "result" of the performance of inquiries in the sense that inquiries into unsolved crimes yielded the information. However, we construe the information to be a "result" of the performance of inquiries in the sense that inquiries into Megan's Law offenses resulted in the idea to assemble the information as an investigatory tool. Once collected, law enforcement uses the information in their ongoing investigations of sexually violent offenses and, as such, is investigative information.

Based on the foregoing analysis, we deny the Auditor General's application for summary relief.

### ORDER

AND NOW, this 8th day of March, 2004, the application for summary relief filed by the Department of The Auditor General, Commonwealth of Pennsylvania; and Auditor General Robert P. Casey, Jr., Petitioner, is hereby denied.

### DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's decision because I disagree that the information requested by the Auditor General—the names, addresses and release dates of individuals registered as sexual offenders with the Pennsylvania State Police (State Police)—is "investigative information" prohibited from disclosure to non-criminal justice agencies under the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101–9183.

In this case, the Auditor General requested from the State Police a list of the names, addresses and release dates of sex-

ual offenders listed on what is commonly known as the Megan's Law[1] registry who were convicted between July 9, 2000 and June 10, 2003. The State Police denied the request citing Sections 9102 and 9106(c)(4) of the CHRIA, 18 Pa.C.S. § 9102 and 9106(c)(4), which disallow "investigative information" from being disseminated to anyone other than criminal justice agencies. The Auditor General filed a petition with this Court seeking a declaratory judgment and arguing that the requested information was not "investigative information" prohibited from disclosure under the CHRIA. The State Police filed an answer with new matter arguing that Megan's Law did not authorize it to disclose the requested information to the Auditor General.

The majority agrees with the State Police and denies the Auditor General's request for summary relief relying on both the CHRIA and Megan's Law to determine that the requested information is "investigative information" and not available to the State Police. I disagree that the requested information is "investigative information" because the compiled list is a list of sex offenders who have already been convicted; therefore, no ongoing investigation is occurring and the list of the convicted sex offenders is a list of public record.

There are three types of records that are kept by government agencies:

1) records that *must* be made public because they are subject to the Right-to-Know Act;[2]

(2) records that *may* be made public because they fall within the discretion of the public official to make them public because they either fall within an excep-

---

1. The Act is actually titled the Registration of Sexual Offenders Act, 42 Pa.C.S. §§ 9791–9799.7.

2. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.4. Under the Right-to-Know Act, public records are open for public inspection and examination.

tion under the Right–to–Know Act or are otherwise not prohibited from being released; and

(3) those records that *cannot* be released because there is an express statutory prohibition against their release, i.e., social security numbers, criminal records and tax records.

*Juniata Valley School District,* 797 A.2d 428, 430 (Pa.Cmwlth.2002).

The State Police contend that the information requested falls within the third category of information because it is investigative information that it is prohibited from releasing under CHRIA. CHRIA defines "investigative information" as information assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information. 18 Pa.C.S. § 9102. Under this definition, to be considered "investigative information" prohibited from dissemination, the information must be particular to an investigation into a particular crime. A list of persons convicted of sexual offenses are not part of any investigation of a particular crime, but merely a record of persons convicted of crimes as a result of convictions in a court of law.

Moreover, contrary to the position of the State Police, CHRIA specifically allows records of convictions to be disclosed. Section 9104 of that Act provides, in relevant part:

(a) General rule.—Except for the provisions of Subchapter B (relating to completeness and accuracy), Subchapter D (relating to security) and Subchapter F (relating to individual right of access and review), nothing in this chapter shall be construed to apply to:

(1) Original records of entry compiled chronologically, including, but not limited to, police blotters and press releases that contain criminal history record information and are disseminated contemporaneous with the incident.

(2) Any documents, records or indices prepared or maintained by or filed in any court of this Commonwealth, including but not limited to the minor judiciary.

(3) Posters, announcements or lists for identifying or apprehending fugitives or wanted persons.

(4) Announcements of executive clemency.

(b) Court dockets, police blotters and press releases.—Court dockets, police blotters and press releases and information contained therein shall, for the purpose of this chapter, be considered public records.

\* \* \*

(d) Certain disclosures authorized.— Nothing in this chapter shall prohibit a criminal justice agency from disclosing as individual's prior criminal activity to an individual or agency if **the information disclosed is based on records set forth in subsection (a).** (Emphasis added.)

42 Pa.C.S. §§ 9104(a), (b) and (d).

A list of individuals who have been convicted of committing sexual offenses can only be complied from information that is based on information that comes from a docket or indices kept by the courts which is specifically allowed, placing those types of records in the second category of public records that may be released, though not required, to the general public under the Right–to–Know Law. That type of information can be released at the discretion of the agency to anyone or be compelled to release them in response, as here, to allow an agency to carry out its legislatively mandated responsibilities.

Regarding Megan's Law, while it does not specifically authorize the State Police from releasing the information, nothing in Megan's Law prohibits the State Police from giving the Auditor General the information it seeks. Again, absent a prohibition, while the list may not have to be given to the public, like all information that is needed to perform an audit, it must be turned over to the Auditor General so that he can fulfill his responsibilities.[3]

Accordingly, for the above stated reasons, I dissent.

Judges McGINLEY and SMITH–RIBNER join in this dissenting opinion.

**3.** I note that the Auditor General has already agreed that he would not release the list, thereby ameliorating privacy concerns raised by the State Police.