**John DOE, Appellant**

v.

**Stephen A. ZAPPALA, Jr. in his capacity as District Attorney of Allegheny County; Bruce Beemer in his capacity as a Deputy District Attorney of Allegheny County; Bureau of Police of the Department of Public Safety of the City of Pittsburgh.**

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 2009.

Decided Dec. 17, 2009.

---

—————

Norma Chase, Pittsburgh, for appellant.

Amy E. Constantine, Asst. District Attorney, Pittsburgh, for appellees, Stephen A. Zappala, Jr. and Bruce Beemer.

Michael E. Kennedy, Pittsburgh, for appellee, Bureau of Police.

BEFORE: SIMPSON, Judge, and FRIEDMAN, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal, John Doe (Appellant) asks whether the Court of Common Pleas of Allegheny County (trial court) erred in denying his request for permanent injunction, pursuant to the Criminal History Records Information Act (CHRIA), 18 Pa. C.S. §§ 9101–9183, against Stephen A. Zappala, Jr., District Attorney, Bruce Beemer, Deputy District Attorney, and, the Bureau of Police of the Department of Public Safety of the City of Pittsburgh (collectively, the Commonwealth). The trial court determined the records Appellant sought to enjoin from use include investigative information, intelligence information, and public transcripts; therefore, these records are exempt from expungement under the CHRIA. Discerning no error in the trial court's determinations, we affirm.

In 2001, the Commonwealth charged Appellant with criminal homicide and other related offenses in connection with the death of James Waite. The Commonwealth alleged Appellant conspired with Michael Morgan to commit these crimes.

Approximately five to six days after the death of Waite, Morgan was found dead by drowning. A coroner ruled Morgan's death a homicide, but the Commonwealth did not arrest anyone in connection with his death until 2006.

In 2002, a jury acquitted Appellant of all charges in the Waite case. Following trial, Appellant sought to expunge his criminal records arising from his arrest and prosecution. *See* 18 Pa.C.S. § 9122 (Expungement). In April, 2004, another judge of the trial court signed two standardized, pre-printed expungement orders requiring the "[Commonwealth] [to] expunge and destroy the official and unofficial arrest, expungement and other documents pertaining to the arrest or prosecution" of Appellant for homicide and other related charges (Expungement Orders). Original Record (O.R.) at Ex. A–1, A–3.

In August, 2007, the Commonwealth charged Appellant with criminal homicide in connection with the death of Morgan. A short time later, Appellant learned the Commonwealth retained certain records from the Waite case and intended to use the information to prove Appellant's involvement in the homicide of Morgan.

In August, 2008, Appellant filed a Motion in Limine in the criminal proceedings requesting that the Commonwealth be prohibited from introducing certain evidence from the prior prosecution pursuant to the Expungement Orders.[1] In particular, Appellant argued the Commonwealth is prohibited from introducing evidence of his alleged involvement in the death of Waite that could lead a jury to infer it is more likely than not he killed Morgan.

On October 3, 2008, Appellant filed the current complaint (Permanent Injunction) seeking "an injunction ... directing [the Commonwealth] to destroy all records of the charges of which [Appellant] was acquitted and prohibiting their use in [Appellant's] impending trial." 18 Pa.C.S. § 9183

---

1. The Motion in Limine is currently pending and is not at issue here. Reproduced Record (R.R.) at 51a.

(relating to injunctions); Reproduced Record (R.R.) at 7a. On October 8, 2008, Appellant filed a motion for a Preliminary Injunction seeking to "prevent the threatened misuse of the records." R.R. at 11a.

■ In December, 2008, the trial court denied Appellant's request for a Permanent Injunction, concluding "the information and materials for which expungement is sought are investigative materials and public record materials, which do not serve the purpose or meet the intent of the [CHRIA]."[2] O.R. at 9; R.R. at 45a.

In its subsequent 1925(a) Opinion, the trial court explained that in cases of acquittal, a petitioner is automatically entitled to the expungement of an arrest record; nevertheless, there is information exempt from expungement, such as investigative and intelligence information. *See Commonwealth v. D.M.,* 548 Pa. 131, 695 A.2d 770 (1997). Trial Ct. Op., 3/2/09, at 2–3; R.R. at 51a–52a.

■ The trial court concluded Appellant was attempting to prevent the Commonwealth from using investigative and intelligence information specifically exempt from expungement. Trial Ct. Op. at 3–4; R.R. at 52a–53a. The trial court further concluded the use of jury trial transcripts from the prior prosecution is permissible in the impending prosecution because those transcripts are public records filed with the court. *Id.; see* 18 Pa.C.S. § 9104 (relating to the scope of public records

that shall not be expunged). This appeal followed.[3]

Appellant contends the trial court erred when it declined to enjoin the Commonwealth from using the records retained from the Waite case in his prosecution for the murder of Morgan. Appellant argues his criminal records from the Waite case do not meet the investigative and intelligence information exemptions under the CHRIA and, thus, the Commonwealth should expunge these records. Alternatively, Appellant submits the scope of the trial court's Expungement Orders is broader than the CHRIA. As such, Appellant maintains the Commonwealth should expunge his criminal records in accordance with the Expungement Orders.

At the outset, we note that the CHRIA provides for the "collection, compilation, maintenance and dissemination of criminal history record information by the [Pennsylvania State Police]." *Dep't of the Auditor Gen. v. Pa. State Police,* 844 A.2d 78, 80 (Pa.Cmwlth.2004); 18 Pa.C.S. § 9103 (Applicability). Section 9102 defines "Criminal history record information" as:

Information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of [1] identifiable descriptions, [2] dates and notations of arrests, [3] indictments, information or other formal criminal charges and [4] any dispositions arising therefrom. *The term does not include intelligence infor-*

---

**2.** "In order to obtain permanent injunctive relief, a party must establish the following elements relative to their claims: (1) the right to relief is clear, (2) the injunction is necessary to avoid an injury that cannot be compensated by damages and, (3) that greater injury will result if the court does not grant the injunction than if it does." *Mazin v. Bureau of Prof. & Occupational Affairs,* 950 A.2d 382, 389 (Pa.Cmwlth.), *appeal denied,* 599 Pa. 684, 960 A.2d 457 (2008). Here, the

trial court determined Appellant's right to relief was not clear and, thus, it did not grant injunctive relief.

**3.** "The Court's review of an order granting a permanent injunction is whether the trial court committed an error of law." *Greenfield Twp. Mun. Auth. v. Burket Trust,* 959 A.2d 522, 525 n. 2 (Pa.Cmwlth.2008).

*mation,*[4] *investigative information*[5] *. . . or information and records specified in Section 9104 (relating to scope).* 18 Pa.C.S. § 9102 (emphasis added).

Pursuant to the CHRIA, the Pennsylvania State Police store criminal history record information in the central repository. *See* 18 Pa.C.S. § 9106 (relating to information in the central repository). Following acquittal, a petitioner is entitled to expungement of the stored criminal history record information. 18 Pa.C.S. § 9122 (Expungement); *D.M.* The CHRIA defines "Expunge" as:

(1) To remove information so that there is no trace or indication that such information existed;

(2) to eliminate all identifiers which may be used to trace the identity of an individual, allowing remaining data to be used for statistical purposes. . . .

18 Pa.C.S. § 9102.

 The purpose of expungement is to protect an individual from the difficulties and hardships that may result from an arrest on record including the harm to one's reputation and opportunities for advancement in life. *Commonwealth v. Butler,* 448 Pa.Super. 582, 672 A.2d 806 (1996). However, although "expungement affords an individual some protection from the difficulties and hardships that may result from an arrest on record, [it] cannot entirely protect him from the consequences of his prior actions." *Id.*

Under the CHRIA, the lack of complete protection is due, in part, to the expungement exemptions. For example, Section 9105 in relevant part provides "[n]othing in

[CHRIA] shall be construed to apply to . . . intelligence information, investigative information . . . [or] modus operandi information. . . ." 18 Pa.C.S. § 9105 (Other criminal justice information).

In addition, Section 9104(a) provides the following public records are exempt from expungement:

(1) Original records of entry compiled chronologically, including, but not limited to, police blotters and press releases that contain criminal history record information and are disseminated contemporaneous with the incident.

(2) Any documents, records or indices prepared or maintained by or filed in any court of this Commonwealth, including but not limited to the minor judiciary.

(3) Posters, announcements, or lists for identifying or apprehending fugitives or wanted persons.

(4) Announcements of executive clemency.

18 Pa.C.S. § 9104. Indeed, the CHRIA clearly identifies whether information is exempt from expungement.

 With these statutory provisions as background, we now turn to this appeal. Appellant argues that pursuant to *D.M.,* expungement following acquittal is an absolute right in Pennsylvania, and now the Commonwealth seeks to undermine that resolution. In particular, Appellant contends intelligence and investigative information, used in a prior prosecution, is not exempt from expungement because the Commonwealth is no longer using the information to investigate or prosecute crim-

---

**4.** Intelligence information concerns the "habits, practices, characteristics, possessions, associations or financial status of any individual compiled in an effort to anticipate, prevent, monitor, investigate or prosecute criminal activity." 18 Pa.C.S. § 9102.

**5.** Investigative information is "assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." *Id.*

inal activity. Thus, Appellant argues the Commonwealth's retention of records concerning the prior prosecution cannot be put to any constructive use. We disagree.

At hearing, Appellant's counsel described the records the Commonwealth retained as follows:

> Now, I requested discovery from the Commonwealth [in the criminal proceedings] ... I was provided with hundreds of page[s], but three pages listing the whole investigation of James Waite and all the witnesses that were interviewed in the James Waite case.
>
> I have been provided with photographs of a car that my client allegedly was driving in the James Waite case, statements of all the witnesses who were called to testify against him in the James Waite case, [and] statements that were taken from him.

R.R. at 19a. In his Reply Brief, Appellant clarifies he is not seeking to suppress historical facts, court transcripts, or personal knowledge but only aiming to enjoin the Commonwealth from using the "documents [it] improperly retained." Appellant's Reply Br. at 5. However, beyond these descriptions, Appellant failed to specify which documents he seeks destroyed or enjoined from use.

In *Department of the Auditor General,* the Pennsylvania Auditor General sought the names, addresses, and release dates of Megan's Law[6] sex offenders. This Court held the Pennsylvania State Police were not required to provide such information to the Auditor General because, under the CHRIA, such information is investigative. Speaking through Judge (now Senior Judge) Friedman, we explained:

> [A]ll "criminal history record information" is assembled as a result of the performance of inquiries into criminal conduct. What distinguishes "criminal history record information" from "investigative information" is that the former arises from the initiation of a criminal proceeding, i.e., an arrest, whereas the latter is composed of information assembled as a result of the performance of an inquiry into a crime that is still under investigation.[FN8]

> FN8. Thus, once there has been an arrest and the criminal proceedings have begun, information about a case becomes "criminal history record information" to the extent that it falls within the statutory definition. *In other words, the initiation of criminal proceedings does not necessarily transform all "investigative information" into "criminal history record information." As indicated above, "criminal history record information" includes only: (1) identifiable descriptions; (2) dates and notations of arrests; (3) the criminal charges; and (4) dispositions.*

*Id.* at 82 (emphasis added).

Here, Appellant is correct that after the initiation of criminal proceedings certain investigative information transforms into criminal history record information. The statute, however, is clear: the transformation from investigative information to criminal history record information *only* applies to: (1) identifiable descriptions, (2) dates and notations of arrests, (3) the criminal charges, and (4) dispositions. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). As a corollary, after the initiation of criminal proceedings, investigative information that does not fall within one of the above four categories is *not* expungeable under the CHRIA.

Furthermore, the Commonwealth submits, and Appellant does not dispute, there are currently no arrest records for Appellant, and the criminal docket reveals no

---

**6.** 42 Pa.C.S. §§ 9791–9799.9.

information regarding Appellant except for a notation of the filing of a transcript. Thus, without further clarification as to which records the Commonwealth is alleged to have improperly retained, it appears the Commonwealth expunged Appellant's records in accordance with the CHRIA.

In addition, the trial court determined the Commonwealth is currently using the records as investigative, intelligence, and *modus operandi* information in the Morgan case. Trial Ct. Op. at 2–4. Given all of the foregoing, we conclude the record supports the Commonwealth's retention of such information as consistent with the CHRIA.

The Supreme Court's decision in *D.M.* does not compel a different result, for factual and legal reasons. Factually, *D.M.* dealt with expungement of an arrest record, not with photographs and witness statements as in the present case. Legally, the Supreme Court distinguished between criminal cases terminated by acquittals and all other criminal cases terminated without conviction, and it confirmed a balancing test for the latter group of cases. This issue has no relevance here.

■ Next, Appellant argues the Commonwealth violated the standardized, pre-printed Expungement Orders. Specifically, Appellant argues the scope of the form Expungement Orders is broader than what the CHRIA mandates. Therefore, the Commonwealth should destroy all the records pertaining to Appellant's arrest or prosecution arising from the Waite case or the Court should enjoin the Commonwealth from using the documents in Appellant's impending prosecution. We disagree.

The standardized, pre-printed Expungement Orders provide for the expungement and destruction of "the official and unofficial arrest, expungement and other documents pertaining to the arrest or prosecution" of Appellant. O.R. at Ex. A–1, A–3. We interpret the form Expungement Orders as requiring expungement consistent with the CHRIA. Any broader interpretation leads to the absurd result that all expungement orders in Allegheny County disregard the statutory restrictions. We decline to attribute such intent to the trial court.

Furthermore, Appellant did not prove the Commonwealth failed to expunge in accordance with the CHRIA. Where Appellant's right to relief is not clear, the trial court did not err in denying his permanent injunction request.[7]

For all the reasons discussed, we affirm.

### ORDER

**AND NOW,** this 17th day of December, 2009, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED.**

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority holds that un-appealed expungement or-

---

7. Appellant also argues the trial court provided the Commonwealth with notice of the Expungement Orders, and it had standing to object but did not. Appellant therefore contends the trial court fully and finally adjudicated his right to the destruction of the records from the prior prosecution and thus this Court should enforce the Expungement Or-

ders. Essentially, Appellant argues the Commonwealth waived any objection to the scope of the Expungement Orders.

Because we interpret the form Expungement Orders as consistent with the CHRIA and not as enlarging the Commonwealth's duties beyond that statute, Appellant's waiver argument is irrelevant.

ders issued by the Court of Common Pleas of Allegheny County (trial court) in April of 2004, directing keepers of records to "expunge and destroy ... documents pertaining to the arrest or prosecution" of John Doe (Appellant) for homicide and related charges,[1] required only that the Commonwealth expunge criminal history record information pursuant to the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101–9183. I cannot agree.

The CHRIA provides that "[c]riminal history record information shall be expunged" when a court order requires it. 18 Pa.C.S. § 9122(a)(2). The word "expunge" means to "remove information so that there is no trace or indication that such information existed." 18 Pa.C.S. § 9102. The term "criminal history record information" is defined as:

> Information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom. The term does not include intelligence information, investigative information or treatment information, including medical and psychological information, or information and records specified in section 9104 (relating to scope).

18 Pa.C.S. § 9102. Under section 9104 of the CHRIA, nothing in the act shall be construed to apply to public records, including court dockets, police blotters and press releases. 18 Pa.C.S. § 9104.

Far less limited in their reach, the trial court's April 2004 expungement orders require, in pertinent part, as follows: "[K]eepers of records shall expunge **and destroy** the official **and unofficial** arrest, expungement and **other documents** pertaining to the arrest or prosecution **or both** of the above named defendant in the above captioned criminal proceedings...." (O.R., 4/1/04 Orders) (emphasis added).

Whereas the CHRIA requires the expungement of **information,** the orders require the expungement of **documents,** whatever information they might contain. Moreover, the orders require not only the **expungement** of documents, but also the **destruction** of documents. Whereas the CHRIA excludes intelligence information, investigative information and public records from its scope, the orders exclude **nothing,** covering any and all official or unofficial documents pertaining to Appellant's arrest and/or prosecution. Indeed, the **unrestricted** catch-all phrase "other documents" necessarily includes documents containing intelligence, investigative or treatment information, or anything else that does not fall within the CHRIA's definition of criminal history record information, just as long as the documents pertain to Appellant's arrest and/or prosecution for homicide. For these reasons, I would not construe the un-appealed trial court orders as restricted by the CHRIA.

In my view, the majority's contrary construction amounts to a reversal of the trial court orders years after expiration of the appeal period. Indeed, although the CHRIA was enacted well before the trial court issued its order, the trial court does not mention the CHRIA or use its well-defined terms in the orders. Particularly absent is the term "criminal history record information."

The majority's only justification for its construction is that a "broader interpretation leads to the absurd result that all

---

1. One order pertained to the charge of criminal homicide, and the other order pertained to the charges of burglary, robbery, conspiracy and firearms violations.

expungement orders in Allegheny County disregard the statutory restrictions." (Majority op. at 196.) However, I submit it is equally absurd to interpret the clear and unambiguous language of the trial court orders as being consistent with the CHRIA. Further, here, we are concerned with only two trial court orders, and, if the trial court intended its expungement orders to be consistent with the CHRIA, the trial court could have indicated as much. It did not do so.

This court has pointed out that an order is an order, not a suggestion. *Cleary v. Department of Transportation*, 919 A.2d 368 (Pa.Cmwlth.2007); *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corporation)*, 676 A.2d 690 (Pa.Cmwlth.), *appeal denied*, 546 Pa. 658, 684 A.2d 559 (1996). Because the language of the trial court orders is clear and unambiguous and because that language is broader in scope than that set forth in the CHRIA, I would reverse.