**iDropped Inc. v. Summo**

C.P. of Lackawanna County, No. 2015 CIV 1714

*Kevin J. Cummings*, for plaintiff.
*Craig A. Hoenie*, for defendant.

MINORA, *J.*, May 7, 2015—

## I. INTRODUCTION

Before the Court is Plaintiff iDropped, Inc.'s ("iDropped") Request for a Permanent Injunction against Defendant Timothy Summo ("Summo"). Plaintiff iDropped filed its request for a preliminary injunction on February 24, 2015, which was denied without prejudice by the Court. A hearing for permanent injunctive relief was then held on March 3, 2015 before the undersigned Judge. After leaving the record open for the preparation of transcripts and the presentation of proposed findings of fact and conclusions of law, the matter is now ripe for decision. For reasons more fully articulated herein, Plaintiff's request for permanent injunctive relief is HEREBY DENIED and DISMISSED.

## II. FINDINGS OF FACT

Plaintiff iDropped is a Pennsylvania corporation with its principal place of business address at 208 North State

Street in Clarks Summit, Pennsylvania. (Pet. for Prelim. Inj. ¶ 1). Plaintiff's business specializes in the repair of Apple electronic products (including iPods, iPads, and iPhones), Samsung Galaxy smartphones, and computers. Charles Hibble is the founder and CEO of iDropped. (Joint Stipulation ¶¶2-3). iDropped opened its first location at the Steamtown Mall in Scranton in 2012 and has since expanded to additional locations in the Wyoming Valley Mall in Wilkes-Barre, PA, as well as the Plymouth Meeting Mall outside of Philadelphia, PA, the Viewmont Mall in Dickson City, PA, and the Stroud Mall in Stroudsburg, PA. Additionally, a franchise location in Edwardsville, PA also exists (*Id.* at ¶¶ 4-6) and Plaintiff is currently in the process of opening other franchises locations, as well. (N.T. 5).

In December of 2012, iDropped hired Defendant Summo as a technician at Plaintiff's Steamtown Mall location. (Joint Stip. ¶ 5). Summo is currently twenty-two years old and worked for Plaintiff from 2012 to 2014. (Defendant's brief at 1). At the time he was hired, Summo was in his first semester of college and worked part time in that position at a rate of ten dollars an hour. (N.T. 47). In 2013, Summo was then promoted to assistant manager of Plaintiff's kiosk in the Wyoming Valley Mall. (*Id.*; Joint Stip. ¶8). At the time of his promotion to assistant manager, he became a full-time salaried employee and made the equivalent of roughly eleven dollars per hour. (N.T. 47-48).

Summo testified that he was a self-taught repair technician, learning most of his skills from the internet. (*Id.* at 50-51). Mr. Hibble, the company's owner, testified that he was also self-taught prior to starting the company and that he

had learned to repair devices through online videos. (*Id.* at 30-31). Summo stated that he observed one of the managers at iDropped do some soldering work so that he "could get a better handle on soldering work," but otherwise he and the manager would use the internet to troubleshoot problems. Otherwise, Summo testified that the only other training he received from iDropped was how to use their computer system to "ring people out," input customer information, and use the "point of sale" (POS) system to access pricing information. (*Id.* at 50-51). When Summo was promoted to assistant manager of the mall kiosk, he had the additional responsibilities of resolving issues between employees, opening and closing the store, making deposits, making schedules for the staff, and maintaining relationships with other stores in the mall by providing them with pizza and donuts. (*Id.* at 36, 52-55, 58).

Mr. Hibble testified that Summo had access to vendor information, pricing systems, customer information through the POS system, marketing plans, and future growth plans. (*Id.* at 7, 14, 36-37). However, Summo stated that he was not integrally involved in any of the business planning, pricing, product design, or marketing. (*Id.* at 55-56). Although he attended a few manager meetings, Summo was not aware of having been privy to any inventions or proprietary information maintained by iDropped and further stated that he was not sure what would even be classified as proprietary information because "there is nothing new under the sun in repair. It's all been done a thousand times over." (*Id.* at 56). Furthermore, the electronics industry and corresponding repair market substantially changes every 6-8 months as technology changes. (*Id.* at 32).

As a condition of his employment, Summo executed a Noncompete Agreement and a Confidentiality Agreement. (Joint Stip. ¶ 6-7). The Noncompete Agreement reads as follows:

> Throughout Employee's employment with iDropped and *for a period of five (5) years after Employee's employment with iDropped ends*, Employee shall not directly or indirectly engage in any business that competes with iDropped. This covenant shall apply to the *geographical area of Scranton, Pennsylvania as well as a 100 mile radius*.

(*See* Plaintiff's Exhibit B at ¶1)(emphasis added). The NonCompete Agreement is attached hereto as "Exhibit A."

In July of 2014, Summo was terminated from his employment for disciplinary reasons. (Joint Stip. ¶ 9; N.T. 21,17). Subsequently, he began working as a part-time repair technician at FixAll Smartphones, a business located at 269 Scranton Carbondale Highway, Dickson City. (Joint Stip. ¶ 10). FixAll Smartphones is a general electronic repair company that repairs all electronic products. FixAll Smartphones does not specifically target the iPhones market because they fix everything else. (N.T. 57). Though the company does fix iPhones, Summo himself does not work on Apple products at FixAll Smartphones. (*Id.* at 54). Instead, his work encompasses virus removal, work on all smartphones such as HTC, LG, and generic brand tablets, and specialty order parts. (*Id.* at 52-53). Summo did not bring any customer lists from iDropped, has never seen a customer at FixAll Smartphones that he tended to while at iDropped, and does not have the means or ability to contacts iDropped's customers through his

employment at FixAll Smartphones. (*Id.* at 68).

Summo also made the following statements concerning the lack of overlap between his two positions:

Q. ...Did you learn any information through your employment [at iDropped] that would have been encompassed by the confidentiality agreement?

A. Possibly.

Q. What would be an example?

A. I suppose, you know, knowing what devices we fix might have been encompassed by that and, I mean, there were no really specialized techni[ques]. As far as I know or if there were that I wasn't — they weren't known to me. But I mean, I was at the manager meetings so I did learn, you know, a bit that they wanted to do the franchising and stuff, but specifics I really didn't know or really can't recall. I think I knew who the vendor was that they went through, although, I can't recall that at this point.

\*\*\*

Q. Do you feel that you have abided by the confidentiality agreement that you signed with iDropped?

A. Well, yes, absolutely. I don't talk about anything that I knew from iDropped, I fix phones where I am. I don't ask — I have nothing to do with part supply. I have no idea where we get the Apple parts that we have from and everything else is gotten from random distributors not any one parts supplier.

(*Id.* at 53-55).

Regarding possible damages potentially suffered by iDropped, Mr. Hibble stated that he does not have any evidence that iDropped has lost any business and could not say whether Summo took any customers with him when he was terminated. Furthermore, Mr. Hibble is not aware of iDropped having suffered any pecuniary loss from the date of Summo's termination to the present. (*Id.* at 24-28).

## III. STANDARD OF REVIEW

In order to obtain permanent injunctive relief, a party must establish the following elements relative to his or her claims: (1) the right to relief is clear; (2) the injunction is necessary to avoid an injury that cannot be compensated by damages; and (3) that greater injury will result if the court does not grant the injunction than if it does. *Doe v. Zappala*, 987 A.2d 190, fn 2 (Pa. Commw. 2009). "An injunction is a court order that can prohibit or command virtually any type of action. It is an extraordinary remedy that should be issued with caution and 'only where the rights and equity of the plaintiff are clear and free from doubt, and where the harm to be remedied is great and irreparable.'" *Big Bass Lake Community Ass'n v. Warren*, 950 A.2d 1137, 1144-45, *citing* 15 Standard Pennsylvania Practice 2d, § 83:2 (2005). Even where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury. *Id.*

## IV. CONCLUSIONS OF LAW

A review of the above-stated criteria reveals that Plaintiff iDropped has not met its burden in demonstrating the need for permanent injunctive relief.

1. The right to relief is not clear, therefore Petitioner fails to meet the first element for permanent injunctive relief articulated in Doe v. Zappala, supra.

The first element for a claimant to prove when seeking a permanent injunction requires a showing of a clear right to relief. As the Superior Court explained in *Synthes USA Sales, LLC v. Harrison*, 83 A.3d 242 (Pa. Super. 2013), to establish a clear right to relief on a claim for breach of restrictive covenants of an employment contract, a party must demonstrate the following:

> In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent. Our law permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer. However, restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living.

*Synthes*, 83 A.3d at 250, *citing Hess v. Gebhard & Co.*, 808 A.2d 912, 917 (Pa. 2002); *All-Pak, Inc. v. Johnston*, 694 A.2d 347, 350 (Pa. Super. 1997) (noting restrictive covenants are strictly construed against employer). "Pennsylvania cases have recognized that trade secrets of an employer, customer goodwill and specialized training and skills acquired from the employer are all legitimate interests protect[a]ble through a general restrictive covenant." *Synthes, supra, citing Thermo-Guard, Inc.*

*v. Cochran*, 596 A.2d 188, 193-94 (Pa. Super. 1991). In essence, the court must examine and balance the employer's legitimate business interest, the "individual's right to work, the public's right to unrestrained competition, and the right to contract... in determining whether to enforce a restrictive covenant." *Synthes*, 83 A.3d at 250.

In the instant case, Plaintiff's Noncompete Agreement is unenforceable because (1) the restrictions imposed by the covenant are not reasonably necessary for the protection of the employer, (2) the restrictions imposed are not reasonably limited in duration and geographic extent and are improperly vague, and (3) the restrictions are an overly burdensome trade restraint that prevents the former employee from earning a living.

First, the restrictions imposed in the covenant are not reasonably necessary for the protection of the employer. The type of interests that have been recognized in the context of a non-competition covenant include trade secrets or confidential information, unique or extraordinary skills, customer good will, and investments in an employee specialized training program. *WellSpan Health v. Bayliss*, 869 A.2d 990, 996 (Pa. Super. 2005); *citing Hess v. Gebhard & Co., Inc.*, 808 A.2d 912, 920 (Pa. 2002). In contrast, a post-employment covenant that merely seeks to eliminate competition *per se* to give the employer an economic advantage is generally not enforceable. *Id.* A trade secret may include "a compilation of information which is used in one's business" that gives one "an opportunity to obtain an advantage over competitors." A trade secret does not include an employee's aptitude, skill, dexterity, manual and mental ability, or other subjective

knowledge. In addition, if a competitor could obtain the information by legitimate means, it will not be given injunctive protection as a trade secret. *Id.* at 997.

The record indicates that Summo was not in possession of confidential business information because he was not integrally involved in any of the business planning, pricing, product design, or marketing. Although he attended a few manager meetings, Summo was not aware of having been privy to any inventions or proprietary information maintained by iDropped. Summo stated that his electronics repairs skills were mostly self-taught from publicly-accessible internet tutorial videos, and that he received little training from Plaintiff.

Second, the restrictions imposed in the Noncompete Agreement are not reasonably limited in duration and geographic extent. The temporal and geographical restrictions imposed on the ex-employee must be reasonably limited. *WellSpan Health v. Bayliss*, 869 A.2d at 999. "The determination of reasonableness is a factual one, requiring consideration of all the facts and circumstances, with the party claiming unreasonableness as a defense against enforcement of the covenant bearing the burden of proof. An unreasonable covenant will not be enforced." *Id.* (citations omitted). The Noncompete Agreement seeks to prevent Summo from engaging in any business that directly or indirectly competes with iDropped, the scope of said restriction lasting for 5 years from the end of Summo's employment and applying "to the *geographical area of Scranton, Pennsylvania as well as a 100 mile radius.*" (*See* Plaintiffs Exhibit B at ¶1)(emphasis added). The electronics industry and the related repair

market for such products are constantly evolving with the industry changing every 6-8 months. The time period that has passed since Defendant Summo's termination in July of 2014 is already in excess of the 6-8 months. Due to the rapid nature of changes in technology in the electronic repair industry, a 5 year restriction that prevents Summo from performing any work for any company that competes either directly or indirectly with Plaintiff is unduly restrictive, burdensome, and unreasonable for the industry. Furthermore, the geographic restriction is improperly vague and undefined. The restriction "to the *geographical area of Scranton, Pennsylvania as well as a 100 mile radius*" does not define a location from which to measure a radius of 100 miles. Plaintiff's principal place of business is in Clarks Summit and Plaintiff has stores in nearby locations in both Scranton and Dickson City. Any of these areas could potentially fall within the purview of the "*geographical area of Scranton, Pennsylvania.*" Without a defined location from which to measure a 100 mile radius, the Court would have to speculate as to the meaning of the Noncompete Agreement before it could potentially be enforced.

Finally, the time and scope restrictions in the Noncompete Agreement are also overly burdensome on Defendant Summo's ability to earn a living. "Restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living." *Synthes*, 83 A.3d at 250, *citing Hess*, 808 A.2d at 917. "If the potential harms to others exceed the potential benefits to the moving party, injunctive relief should generally be denied." *McCahon v. Pennsylvania Turnpike Com'n*, 491 F.Supp.2d 522,527

(M.D. Pa. 2007). Defendant Summo testified that the electronics repair industry is the industry for which he has training and can seek gainful employment. (N.T. 48-50). To prevent Summo from seeking employment in the industry in which he can work to earn a living to support himself for a period of 5 years and within a 100 mile radius is unduly burdensome. Furthermore, the Noncompete Agreement specifies that Defendant Summo is an at-will employee and that the Agreement "does not create any term or duration of employment between [Summo] and iDropped." (*See* Plaintiff's Exhibit B at ¶ 8). The combination of the 5 year/100 mile restriction and the at-will employee status that the Noncompete Agreement purports to impose is unduly restrictive because it allows for the possibility of abuse by the employer. If enforceable, Plaintiff as the employer could fire an employee for any reason or no reason at all and then prevent an employee from working in the industry for a 5 year period of time and within a 100 mile radius. Such capability would allow an employer to manipulate the employer/employee relationship unfairly. Accordingly, the provisions contained within the Noncompete Agreement are unduly restrictive and the Noncompete Agreement is unenforceable.

2. The injunction is not necessary to avoid an injury that cannot be compensated by damages, therefore Petitioner fails to meet the second element for permanent injunctive relief articulated in *Doe v. Zappala*, supra.

The second element for a claimant to prove when seeking a permanent injunction requires a showing that the injunction is necessary to avoid an injury that cannot be compensated by damages. Irreparable injury is harm of

such an irreversible character that prospective judgment following trial would be inadequate to make the moving party whole. The mere risk of injury is not sufficient to meet this standard. Rather, the moving party must establish that the harm is imminent and probable. *McCahon v. Pennsylvania Turnpike Com'n*, 491 F.Supp.2d 522, 527 (M.D. Pa. 2007)(citations omitted).

Though Defendant Summo left his employment in July of 2014 and went to work at another electronics repair company, Plaintiff iDropped has not been able to present any evidence that its business has been adversely impacted. Mr. Hibble testified that he does not have any evidence that iDropped has lost any business and could not say whether Summo took any customers with him when he was terminated. Defendant Summo testified that he did not bring any customers with him from iDropped to FixAll Smartphones, did not have a list of iDropped's customers, and would have no way of contacting said customers. Furthermore, Summo has stated that he has never seen any of iDropped's customers through his work at FixAll Smartphones. Finally, Mr. Hibble is not aware of iDropped having suffered any pecuniary loss from the date of Summo's termination to the present. Further, Mr. Hibble never testified to a slower growth rate or any other negative consequences that he could attribute to Defendant Summo's departure.

3. Greater injury will not result if the Court does not grant the injunction, therefore Petitioner fails to meet the third element for permanent injunctive relief articulated in *Doe v. Zappala*, supra.

The third element for a claimant to prove when seeking a permanent injunction requires a showing that greater injury will result if the Court does not grant the injunction than if it does. As stated above, iDropped has not presented any evidence that its business has suffered any damage in loss of customers, financial loss, or a slower growth rate from Summo's employment at FixAll Smartphones. Furthermore, Summo has testified that he was not integrally involved in any of the business planning, pricing, product design, or marketing such that he could cause any quantifiable harm to iDropped. Summo's work at FixAll Smartphones encompasses a broad range of electronic repair devices and differs from his work at iDropped, where he focused on Apple products. Summo testified that he does not work on Apple products at FixAll Smartphones. Finally, Summo stated that he has nothing to do with part supply at his new job and does not know from which supplier FixAll Smartphones receives Apple parts.

Accordingly, this Court finds that Plaintiff iDropped has failed to advance sufficient evidence to demonstrate that a permanent injunction is merited against Defendant Summo. Furthermore, We find Plaintiff iDropped's Noncompete Agreement to be unenforceable for the following reasons: (1) the restrictions imposed by the covenant are not reasonably necessary for the protection of the employer, (2) the restrictions imposed are not reasonably limited in duration and geographic extent and are improperly vague, and (3) the restrictions are an overly burdensome trade restraint that prevents the former employee from earning a living.

An appropriate Order follows.

### ORDER

AND NOW this 7th day of May 2015, upon consideration of Plaintiff iDropped, Inc.'s Request for a Permanent Injunction, the credible evidence of record, and the briefs submitted by the parties, it is HEREBY ORDERED AND DECREED that Plaintiffs request for injunctive relief is HEREBY DENIED and DISMISSED.